UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                                Case No. 05-CR-240

TIMOTHY VALLEJO, ET. AL.,

        Defendants.

## GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' ROUND ONE PRETRIAL MOTIONS

        The plaintiff, the United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin; Mario Gonzales, Assistant United States Attorney and Special Assistant United States Attorney David Robles for said district, submits herewith its consolidated response to the defendants' Round One Pretrial Motions.

# TABLE OF CONTENTS

Page

I.   Motions to Dismiss Counts One and Two.........................................................................3
   A.   Sufficiency of the Indictment........................................................................3
   B.   Pattern of Racketeering Activity.....................................................................6
   C.   Motion to Dismiss Based Upon the Insufficiency of the "Enterprise" Element.............................................................................12
   D.   Impact of Enterprise on Interstate Commerce..............................................................12
   E.   Defendant's Role in the Enterprise...................................................................15

II.  Motions for Bill of Particulars.........................................................................19
   A.   Standard of Review.......................................................................19
   B.   Nature of the information sought by the defendants pursuant to Federal Rule of Criminal Procedure 7(f)..............................................................20
   C.   Argument ..............................................................21
   D.   Information as to the nature and quantity of drugs and transactions pertaining to individual defendants................................................................22

III. Motions to Compel Disclosure of Confidential Informants...........................23

IV.  Motion for Pre-trial Santiago Hearing........................................................25

V.   Motion to Disclose Legal Instructions Provided to the Grand Jury and Grand Jury Minutes and Venire Lists..........................................................27

VI.  Motion to Dismiss Racketeering Act 10 and/or Count Two RICO Conspiracy because Conspiracy to Commit Murder Predicate Relieves the Prosecution of Proving all the Elements of RICO Conspiracy......................................32

VII. Motion for Disclosure of Jencks Act Material and Grand Jury Transcripts of Witness Testimony.........................................................................35

VIII. Motion for Disclosure of Agreements Between the Government and Government Witnesses.......................................................................36

IX.  Motions for Pretrial Notice of Government's Intent to Use Evidence of Other Crimes.............................................................................37

i

X.      Motion to Strike Surplusage from the Indictment.....................................38

XI.     Defendant's Motion to Compel Discovery...........................................40

XII.    Defendant's Motion to Disclose Mail Interception or Mail Cover...................41

XIII.   Defendant's Motion for the Disclosure of Exculpatory Evidence...................42

XIV.    Motion to Dismiss Due to issue of Juvenile Jurisdiction............................45

XV.     Motion to Require the Government to Admit or Deny Whether any Evidence or
        Testimony Used by the Government was Unconstitutionally Obtained............49

XVI.    Motion to Disclose Use of Pen Register and Title III Interception or Wiretap.....49

XVII.   Motion for Disclosure of Destruction of Evidence...................................50

XVIII.  Motion to Disclose Expert Testimony..................................................52

XIX.    Motion for Preservation of Agent Notes..............................................52

XX.     Defendant's Motion to Suppress Evidence Based upon the Lack of Probable
        Cause in the Supporting Affidavit for the Search Warrant...........................53

        A.      Probable Cause for Search Warrant...........................................53

        B.      Good Faith Exception.........................................................55

XXI.    Motion to Dismiss Count Three Based upon Double Jeopardy.....................56

XXII.   Motion to Disclose Government's Intention to use Evidence Pursuant to Federal
        Rule of Criminal Procedure 12(b)(4).................................................56

XXIII.  Motion to Dismiss based upon Speedy Trial Violation.............................57

XXIV.   Defendant's Motion to Dismiss Based Upon Double Jeopardy.....................60

## I.     Motions  to Dismiss Counts One and Two

Several of the defendants allege that either Count One of the indictment (RICO) or Count Two of the indictment (RICO conspiracy) are insufficient for a variety of reasons.  Defendants, Gregorio Acosta, Doc. 580 and 583; Nicholas Acosta, Doc. 556; Carlos Avila, Doc. 695; Jorge Barragan, Doc. 676;  Craig Burnett, Doc. 546; Carlos Balentine, Doc. 543, 544; Desmond Cornelius, Doc. 615;  Hugo Del Portillo, Doc. 572; William Fuhr, Doc. 578; John Garcia, Doc. 569; Luis Garcia, 610; Richard Kerner, Docs. 647, 650, 651; Gonzalo Mejia, Doc. 554; Martin Martinez, 623; Andre Przeworski, Doc. 681; Sadam Salem, Doc. 602; Jesus Tello, Doc. 607, and Regino Viasana, Doc. 604; have filed motions to dismiss Counts One and Two based on alleged inadequacies in the racketeering charges.  For the reasons set forth below, these motions are without merit and therefore should be denied.

### A.     Sufficiency of the Indictment

In considering the sufficiency of a criminal indictment, the Seventh Circuit Court of Appeals has stated that:

> An indictment must include all of the essential elements of the crimes allege therein, and each basis for conviction must be "clearly set out in the indictment." . . . In reviewing the sufficiency of an indictment, a court shall consider each "challenged count as a whole and should refrain from reading it in a hypertechnical manner."   . . . The indictment must be "read to include facts which are necessarily implied" and "construed according to common sense."

United States v. Palumbo Brothers, Inc. 145 F.3d 850, 860 (7th Cir. 1998).  As to the requirements of a RICO indictment, the court stated :

3

> A violation of RICO [1962(c)] occurs when a person is (1)
> employed by or associated with, (2) an enterprise, (3) engaged in
> or affecting interstate commerce, (4) where the person conducts or
> participates in a pattern of racketeering activity . . .. To
> sufficiently allege a pattern of racketeering activity, the statute
> requires "at least two acts of racketeering activity within ten
> years." However, something beyond a mere number of acts also is
> required; the indictment must contain sufficient facts to
> demonstrate that the racketeering acts are related and that those
> acts establish or threaten continuing criminal activity.

Palumbo Brothers, Inc., 145 F.3d at 877.

Some of the defendants assert that either the indictment or the discovery material fail to articulate the manner in which the individual predicate acts are related such that they form a pattern. While a pattern of racketeering activity requires a showing of "continuity plus relationship" between the predicate acts H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 239 (1989), the continuity and relationship features of a RICO pattern are not essential elements of the crime which need to be alleged with particularity in the indictment. See Palumbo Bros., Inc., 145 F.3d at 877. Rather, they are "necessary characteristics of the evidence used to prove the existence of a pattern," which is an essential element of a RICO offense. "Allegations in an indictment do not require conclusive proof of every aspect of the crime to sufficiently allege a violation; rather an indictment requires only the essential elements." Id. Since the indictment fully sets forth those essential elements, it is of no consequence that the indictment may not contain an explanation of the continuity plus relationship aspects of the pattern requirement.

Nevertheless, the defendants allege that various aspects of the indictment are ambiguous, and therefore fail to provide the defendants with adequate notice of the nature of the charges against them in violation of their right to due process. A review of the indictment as a whole establishes otherwise. For instance, Counts One and Two provide a definition of the "Latin Kings," a

4

description of the criminal activity allegedly committed by the members of the Latin King Enterprise, as well as a definition of the enterprise for purposes of 18 U.S.C. § 1961(4). An introductory paragraph to the indictment (paragraph 4) then provides detailed factual allegations describing the nature of the Latin King Enterprise, its structure and hierarchy, the general geographical area in which the Latin Kings operate, as well as a description of the crimes allegedly committed by the Latin Kings in furtherance of the enterprise. Paragraphs 5-11 outline several purposes of the enterprise, and paragraph 12 includes a listing of the various means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of that enterprise. Finally, Counts One and Two each recite the statutory language under 18 U.S.C. sections 1962(c) and (d), supplemented in Section IV by allegations of the various acts which make up the alleged predicate acts of racketeering.

Similarly, Count Two adequately alleges that the defendants participated in a conspiracy to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. The enterprise is identified and defined by reference to Count One, as is the pattern of racketeering activity. Further, Count Two specifically charges that each alleged co-conspirator must have agreed to the commission of at least two of the specified racketeering acts. It is well established that allegations of this nature are sufficient to state a cause of action under 18 U.S.C. § 1962(d). <u>See</u> <u>Salinas v. United States</u>, 522 U.S. 52 (1997); <u>United States v. Neapolitan</u>, 791 F.2d 489, 498-500 (7th Cir. 1986); <u>United States v. Crocket</u>, 979 F.2d 1204 (7th Cir. 1992); <u>United States v. Glecier</u>, 923 F.2d 496, 498-501 (7th Cir. 1991). <u>See</u> <u>also</u> <u>United States v. Campione</u>, 942 F.2d 429, 436-38 (7th Cir. 1991) (noting that the conspirators need not agree on which two predicate offenses will be committed).

### B.    Pattern of Racketeering Activity

Despite the specific and detailed allegations of the indictment, several of the defendants assert that the allegations of the indictment are insufficient to establish a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).  That section provides that a pattern of racketeering requires at least two acts of  "racketeering activity," which defined in § 1961(1).  Proof of two acts of racketeering activity, in and of themselves, do not constitute a pattern for RICO purposes.  H.J. Inc., 492 U.S. at 237.  Rather, a "pattern" for RICO purposes depends upon proof of "continuity plus relationship" among predicate acts.  Sedima, S.P.R.L. v. Imrex Company, 473 U.S. 479, 496 n.14 (1985).  In a case decided by the Second Circuit involving a RICO prosecution against members of the Latin King gang, the court found that the government's proof at trial established the existence of a pattern of racketeering activity.  In so holding, the court explained that "the requirements of relatedness and continuity prevent the application of RICO to isolated or sporadic criminal acts." United States v. Diaz, 1999 W.L. 274852 at p.22 (2nd Cir. May 4, 1999).

Following the Supreme Court's Sedima decision, the Seventh Circuit in Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir. 1986) designed a case by case test for determining the existence of "continuity plus relationship," a test which is mirrored by the Second Circuit.   The four factors identified by the court are "[1] the number and variety of predicate acts and the length of time over which they were committed, [2] the number of victims, [3] the presence of separate schemes and [4] the occurrence of distinct injuries."  Morgan, 804 F.2d at 975.

In explaining how to analyze these factors, the court stated:

6

> Requiring both continuity and relationship among the predicate acts for the pattern requirement to be met is a sound theoretical concept that is not easily accomplished in practice. This is because the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the predicate acts were committed somewhat closely in time to one another, involved the same victim, or involved the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. To focus excessively on either continuity or relationship only effectively negates the remaining prong . . .. In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., "transactions somewhat separated in time and place."

Morgan, 804 F.2d at 975.

In H.J., Inc., supra, the Supreme Court again considered the concept of "continuity plus relationship" in analyzing the Eighth Circuit's requirement that a "pattern" require proof of multiple illegal schemes. In rejecting this requirement, the Court stated that "Congress had a more natural and common sense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breath that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threaten the likelihood of, continued criminal activity." 492 U.S. at 237.

The Supreme Court went on to state that Congress "had a fairly flexible concept of pattern in mind." While a pattern cannot be based on "sporadic activity" or "two widely separate and isolated criminal offenses, . . . to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 429 U.S. at 239. As to the issue of relationship, the Court stated that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results,

7

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated." 492 U.S. at 240.

As to the continuity aspect, the Court stated that it must "be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, <u>continuing</u> racketeering activity." 492 U.S. at 240 (emphasis in original). In this context, the Court rejected the requirement of multiple schemes, but stated that "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendants racketeering activity . . ." 492 U.S. at 240. The Court stressed that proof of continuity would depend on "on the specific facts of each case" but noted that continuity would be established "by showing that predicate acts or offenses are part of an ongoing entity's regular way of doing business." Thus, continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." 492 U.S. at 242-43.

Subsequent to <u>H.J., Inc.</u>, the Seventh Circuit reaffirmed its four part test for determining the 'pattern' element. The court stated "that this circuit will still look to the factors identified in <u>Morgan</u> in determining whether a 'pattern' sufficient to support a RICO claim has been alleged. The impact of the courts decision in <u>H.J., Inc.</u>, beyond its express holding that two schemes need not be shown to prove a 'pattern', is that we now analyze these various factors with an eye toward achieving a 'natural and common sense' result." <u>United States Textiles, Inc. v. Anheuser Busch Companies, Inc.</u>, 911 F.2d 1261, 1267 (7th Cir. 1990).

In light of the principles set forth above, Count One of the indictment sufficiently alleges a

8

pattern of racketeering activity which fully satisfies the holdings of the Supreme Court and the Seventh Circuit. Although not required, the indictment alleges that each of the defendants participated in "multiple criminal schemes" in furtherance of the racketeering enterprise alleged in the indictment, which according to the Supreme Court is "highly relevant to the inquiry into the continuity of the defendant's racketeering activity." H.J., Inc. 492 U.S. at 240. In addition, the indictment alleges that each of the predicate acts and offenses are part of the Latin Kings' regular way of doing business. As H.J., Inc. recognized, this allegation establishes the likelihood of continued criminal activity sufficient to support the pattern element. 492 U.S. at 237. Accordingly, the indictment more than adequately alleges both that the predicate acts are related and that the members of the organization pose a threat of continued criminal activity. As the court in H.J. Inc. explained:

> A "pattern" is an "arrangement or order of things or activity, . . . and the mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bare to each other or to some external organizing principle that renders them "ordered" or "arranged."

492 U.S. at 238. In this case, the "external organizing principle" is the purposes, goals, and methods of the Latin King Enterprise. For this reason, the predicate acts need not be of a precisely similar nature in order to be related for RICO purposes. Rather, "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. at 240. The criminal activities in the indictment are alleged to be purposeful activities sanctioned and engaged in by members of the Enterprise. See United States v. Indelicato, 865 F.2d 1370, 1384 (2nd Cir. 1989) ("if the racketeering acts were performed at the

9

behest of an organized crime group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated."). These activities include violence to enforce internal discipline or eliminate rivals, drug trafficking, and intimidation of witnesses. In addition, the indictment alleges that profits derived from criminal activity are to be shared with the enterprise (Count One, paragraph 4 (i)) and that violence is used to protect the existence and activities of the Enterprise.

Addressing a similar issue in the context of the sufficiency of the evidence presented a trial, the Second Circuit in Diaz, a Latin King prosecution, explained as follows:

> Regarding the continuity requirement, this court has noted that "the nature of the enterprise may . . . serve to show the threat of continuing activity. Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity." . . . Here, we find that the continuity requirement is met because the murders and the nature of the Latin King Enterprise clearly demonstrated a threat of continuity. The Latin Kings were engaged in racketeering activities, in particular, drug trafficking, and related violence. The murder of a suspected informant and the simultaneous murder of an innocent bystander directly carried with it the threat of continued drug trafficking and associated violence to protect the gang's narcotics operation and members.

Diaz, supra at p.24.

Because the indictment alleges that the specific criminal acts alleged in Section IV of the indictment are related to the goals of the enterprise and to each other, the relatedness requirement of H.J., Inc. is satisfied. For example, defendant, Gonzalo Mejia points out that he is named in only three of the predicate acts, one predicate act consisting of an overall Latin King conspiracy to murder rival gang members(racketeering act #10), attempted murder of Mexican Posse gang members on June 15, 2003, (racketeering act #33) and the attempted murder of Juan and Noel Martinez on July 9, 2005; (racketeering act #59). Although the indictment alleges that Gonzalo

10

Mejia was personally involved in those three criminal episodes, the predicates are related to one another because they are alleged to have been committed by Mejia on behalf of the Latin King Enterprise and in order to achieve its objectives. This same analysis applies to the indictment against each and every defendant; each committed or conspired to commit two or more acts of racketeering which are related to one another because they were committed for the benefit of the Latin King Enterprise. The factors outlined by the Seventh Circuit also established the existence of the continuity prong of the pattern requirement. As the court stated in H.J., Inc., "the threat of continued criminal activity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long term association that exists for criminal purposes." 492 U.S. at 242-43; see also Diaz, supra,, at p.22. Here, the indictment alleges that the Latin King gang has a long term and ongoing existence. In addition, the enterprise, the Milwaukee Chapter of the Almighty Latin King Nation, is alleged to be an Enterprise which exists for criminal purposes. Further, it is alleged that the specific predicate acts were committed as part of the enterprise's regular way of doing business. As a natural consequence of these facts, the threat of continued racketeering activity is ongoing. The fact that the various defendants, who were members and/or associates of that enterprise are alleged to have personally participated in a finite number of alleged racketeering activities does not undercut the existence of a pattern for RICO purposes.

As set forth above, the indictment against each of the defendants more than adequately alleges the existence of a pattern of racketeering activity, as well as a relationship between each of the defendants, their actions and the criminal objectives of the Latin King Enterprise. Although as noted above the continuity and relationship aspects of the pattern requirement need not be specifically alleged in the indictment, the government understands that it must prove those aspects of

11

the pattern element at trial. Accordingly, the defendants motions to dismiss based upon the alleged insufficiency of the indictment should be denied.

### C.        Motion to Dismiss Based Upon the Insufficiency of the "Enterprise" Element

Several defendants  also alleges that the indictment lacks a precise definition of the "Enterprise" element. The Seventh Circuit has held that the hallmark of an enterprise is "structure." See United States v. Neapolitan, 791 F.2d 489, 500 (7th Cir. 1986). An enterprise includes informal organizations such as criminal gangs, and "there must be some structure to distinguish an enterprise from a mere conspiracy, but there need not be much." Kornado, 29 F.3d at 1117 (quoting Burdett v. Miller, 957 F.2d 1375, 1379 (7th Cir. 1992)). "A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision - making." United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir. 1996). In this case, the indictment specifically defines the enterprise as the Milwaukee Chapter of the Almighty Latin King Nation, a group which meets the definition of an enterprise contained in 18 U.S.C. § 1961(4), and explains the nature of its structure and functions. (See indictment, paragraph 3 & 4). This specific definition of the enterprise places the defendants on notice of the nature of the allegations against them, and therefore raises no due process concerns.

### D.        Impact of Enterprise on Interstate Commerce

Several defendants  have moved to dismiss or strike counts one and two of the indictment on the grounds that the Latin King enterprise did not impact interstate commerce during the alleged racketeering acts and conspiracies. This motion is without merit and should be denied. Section 1962(c) of the Racketeer Influenced and Corrupt Organization Act ("RICO") provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or

the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *18 U.S.C. § 1962(c)*. In a RICO prosecution, "the government carries the burden of establishing an effect on interstate commerce." United States v. Farmer, 924 F.2d 647, 651 (7th Cir.1991). Under § 1962(c), however, "[a] minor or minimal influence on interstate commerce is sufficient." Id. As such, the " 'required nexus between the activities of the enterprise and interstate commerce need not be great.' " Id. Additionally, to satisfy the interstate element of the RICO statute, "it is the enterprise and not the individual defendants that must engage in or affect interstate commerce." Id.

As the Seventh Circuit noted in United States v. Peterson, 236 F.3d 848 (7th Cir.2001), in Morrison and Lopez the Supreme Court struck down the Violence Against Women Act and the Gun-Free School Zones Act of 1990 because neither contained a jurisdictional element establishing that the federal causes of action contained in those statutes were in pursuance of Congress's power to regulate commerce. Id. at 852.   United States v. Morrison, 529 U.S. 598, (2000);United States v. Lopez, 514 U.S. 549, (1995).    In Peterson, the court concluded that the Court's decisions in Morrison and Lopez do not undermine "our prior holdings that a showing of a de minimis effect [on interstate commerce in a Hobbs Act prosecution] is constitutionally satisfactory," 236 F.3d at 852, noting: " We do not view the Hobbs Act as impermissibly regulating local conduct, that is, it does not regulate robbery for the sake of regulating robbery.... [T]he Hobbs Act does not suggest that robbery is an economic activity; rather, the Hobbs Act regulates interference with economic activity by robbery. In other words, it does not federalize all robberies because all robberies per se affect interstate commerce; rather, it applies only to robberies with the proven effect." 236 F.3d at 852.

13

Like the Hobbs Act, RICO contains the jurisdictional element necessary to establish that the statute was enacted pursuant to Congress's power to regulate commerce. See Title 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs...."); United States v. Marino, 277 F.3d 11, 35 (1st Cir.2002) (holding that after Morrison and Lopez the government does not have to show, in a RICO prosecution, that the enterprise's activities had a substantial effect on interstate commerce, only that the enterprise's activities had a de minimis effect on interstate commerce). Thus, while the Seventh Circuit's decision in Peterson involved the Hobbs Act rather than RICO, the principle enunciated in Peterson is equally applicable in the RICO context. See United States v. Chance, 306 F.3d 356, 374 (6th Cir.2002) (holding that "[l]ike RICO, the Hobbs Act only requires a showing of a de minimis connection with interstate commerce").

In the present case which charges the existence of a drug trafficking , the government met its burden under § 1962(c). See, e.g., Farmer, 924 F.2d at 651 (holding that the possession of a drug scale in Illinois that was manufactured in New Jersey supported RICO conviction); United States v. Alvarez, 860 F.2d 801, 820 (7th Cir.1988) (holding that agent's testimony that defendant participated in two heroin sales with him was sufficient to satisfy the government's "minimal burden" under § 1962(c)). The government also contends that the gang's possession of firearms shipped in interstate commerce satisfies its burden of proof under § 1962(c), relying on United States v. Juvenile Male, 118 F.3d 1344, 1349 (9th Cir.1997) (holding that RICO's requirement of de minimis effect on interstate commerce was proven because, inter alia, " 'the firearm used during the robbery had moved in interstate commerce, and the reason for the robbery was to obtain additional firearms

14

(which has a potential impact on interstate commerce.").

In the present case the indictment alleges that the Latin King Enterprise was engaged in a conspiracy to distribute controlled substances, which are not manufactured in the United States, such as cocaine. The indictment also alleges that the Milwaukee Chapter of the Latin King enterprise falls under the supervision of the Northwest region in the state of Illinois. (Paragraph 4(a)). The indictment also alleges that as part of the Latin King enterprise, members routinely travel in interstate commerce and transport firearms in aid of the enterprise.( Paragraphs 12 (h) and (k)). The indictment in the present case clearly establishes an interstate nexus.

### E.    Defendant's Role In the Enterprise

Several defendants have moved to dismiss or strike counts one and two of the indictment on the grounds that they were not in positions of authority within the Latin Kings during the alleged racketeering acts and conspiracies. This motion is without merit and should be denied.

In support of their argument, the defendants relies upon the Supreme Courts decision in Reves v. Ernst & Young, 507 U.S. 170 (1993).  The Seventh Circuit in MCM Partners v. Andrew-Bartlett and Associates, 62 F.3d 967 (7th Cir. 1995) summarized the impact of the Reves decision as follows:

> To be liable under § 1962(c), the court held, it must be shown that the defendant "participated in the operation or management of the enterprise itself" . . . and that requires that the defendant play "some part in directing the enterprises affairs.  . . . At the same time, however, the Court refused to limit § 1962(c)'s reach to upper level management, explaining that an enterprise also may be operated by "lower - run participants . . . who are under the direction of upper management."   . . . Under Reves , therefore, a RICO enterprise may be operated at least by "upper management, lower - rung participants in the enterprise who are under the direction of upper management, or others associated with the enterprise who exert control over it . . .."

15

62 F.3d at 977 (citations omitted; emphasis in original). In so explaining, the Seventh Circuit

concurred with the First Circuit's opinion in United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994).

In that case, the court held that "a defendant may participate in a conduct of an enterprise

by knowingly implementing decisions, as well as by making them." MCM Partners, 62 F.3d at 978.

Thus, the Seventh Circuit concluded that:

> In our view Oreto correctly reconciles the Supreme Court's
> holding in Reves - that a defendant must play some part in
> directing the enterprises affairs - with its subsequent statement that
> "lower - run participants . . . under the direction of upper
> management" may also "operate" the enterprise.

62 F.3d at 978. While the Reves analysis is relevant to the RICO charge contained in Count 1, it

does not apply to the crimes of conspiracy, either to commit RICO or a drug offense as alleged in

Counts 2 and 3 of the indictment. See MCM Partners, 62 F.3d at 979-80; United States v.

Quintunilla, 2 F.3d 1469, 1484-85 (7th Cir. 1993).

Similarly, in the Napoli, Connecticut Latin King prosecution, two of the defendants argued

that RICO liability should not extend to them because there was no evidence to show that they

played any part in directing the affairs of the Latin King Enterprise. In rejecting the defendant's

argument, the court noted that:

> Under the Reves operation - management test, even if a defendant
> is not acting in a managerial role, we have held that he can still be
> liable for directing the enterprises affairs if he "exercised broad
> discretion" in carrying out the instructions of his principle. Napoli
> v. United States, 45 F.3d 680, 683 (2nd Cir. 1995).

In the Connecticut Latin Kings case, the court noted that the evidence shows that the defendants

killed a suspected informant "at the behest of Latin King leaders." In addition, the court noted that

the defendants decision to kill and thereby eliminate a potential witness to that murder demonstrates

16

that they had discretionary authority in carrying out the instructions of their principles. Accordingly, the court found sufficient evidence that the defendants had roles in directing the affairs of the Latin Kings Enterprise to support their RICO convictions. Id. at p.22.

The issue of participation in the enterprise was addressed in United States v. Wong, 40 F.3d 1347, 1373-74 (2nd Cir. 1994), cert. denied, 516 U.S. 870, 116 S. Ct. 190, 133 L.Ed. 127), where the court stated "Reves makes it clear that a defendant can act under the direction of superiors in a RICO enterprise and still "participate" in the operation of the enterprise within the meaning of § 1962(c)." This holding was followed in United States v. Starrett, 55 F.3d 1525 (11th Cir. 1995). There the court said "moreover, we agree with the First Circuit that one may be liable under the operation or management test by 'knowingly implementing decisions, as well as by making them.'" Starrett, 55 F.3d at 1528. A Title 18 United States Code § 1962(d) conspiracy conviction does not require the jury to find that the defendant was an operator or manager of the enterprise. See Brouwer v. Raffensperger, 199 F.3d 961, 967 (7th Cir. 2000). To convict the defendant of Count 2, the jury needed only to find that he knowingly agreed to facilitate the activities of those operators or managers to whom § 1962(c) can apply. In Wong and Starrett, the scope of criminal liability was addressed in the context of multiple defendants charged with participation in the racketeering enterprise. The members of the respective enterprises in Wong[1] and Starrett[2], committed acts of violence and drug dealing during the operation of the enterprise to raise money, control members within the respective criminal enterprises, and in Wong as a means of defending their "turf" from rival gang members. The present Latin King RICO indictment mirrors the criminal conduct

---

[1] The criminal enterprise or gang in Wong were the "Green Dragons."

[2] The criminal enterprise or gang in Starrett were the "Outlaws," a motorcycle gang.

described in the <u>Wong</u> and <u>Starrett</u> indictments. In <u>Wong</u>, the court upheld the convictions of gang members Wang and Ngo under 18 U.S.C. § 1962(c) and (d). Wang and Ngo were members of the "Green Dragons" criminal enterprise and involved in the criminal activities such as extortion and homicide. <u>Wong</u>, 40 F.3d at 1354. The court found participation in these predicate acts comprising the core of criminal activity of the "Green Dragons" was sufficient to sustain the RICO convictions, as their participation in the predicate acts involved them in the "operation" of the enterprise within the meaning of § 1962(c). <u>Wong</u>, 40 F.3d at 1373-74. There is no indication in the <u>Wong</u> decision that Wang or Ngo directed the activities of the "Green Dragons."

Therefore, 18 U.S.C. § 1962(c) imposes criminal liability on any individual who by association with the enterprise participates directly or indirectly in the conduct of that enterprise's affairs through a pattern of racketeering activity. The statute is intended to impose criminal liability upon all participants in the criminal enterprise, not simply those "directing" the operation of the enterprise. Any other interpretation would eviscerate the RICO statute.

In the case at hand, the indictment adequately alleges that each of the named defendants committed acts of racketeering on behalf of and for the benefit of the Enterprise. In light of the Seventh Circuit's ruling in <u>MCM Partners</u>, it is not necessary that a particular role be ascribed to each defendant since the relevant inquiry is not whether they were in some "position of authority," as the defendants assert. Instead, the evidence at trial must indicate that each defendant played some part in directing the affairs of the Enterprise, either by knowingly making decisions or by knowingly implementing those decisions on behalf of the organization. Accordingly, the defendant's motions to dismiss or strike certain counts of the indictment based upon the defendant's particular role in the offense should be denied as premature pending the nature of the proof at trial.

18

## II.    Motion for Bill of Particulars.

Many of the defendants have filed motions requesting the government to provide a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f).  (See the motions of Gregorio Acosta, Doc. 583; Nicholas Acosta, Doc. 556; Carlos Avila, Doc. 692; Jorge Barragan, Doc. 678; Craig Burnett, Doc. 546; Johnny Burnett, Doc. 640, 641; Desmond Cornelius, Doc. 617; Hugo Del Portillo, Doc. 572; William Fuhr, Doc. 578; John Garcia, Doc. 601; Luis Garcia, Doc. 606; Richard Kerner, Doc. 647, 650, 651; Martin Martinez, Doc. 623; Gonzalo Mejia, Doc. 547; Jorge Palacio, Doc. 600; Bobby Palacios, Doc. 620; Andre Przeworski, Doc. 681; Joe Sanchez, Doc. 526; and Regino Viasana, Doc. 604.)  Federal Rule of Criminal Procedure 7 (f) provides:

> . . . (f)  Bill of Particulars.  The court may direct the filing of bill of particulars.  A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit.  A bill of particulars may be amended at any time, subject to such conditions as justice requires.

### A.    <u>Standard of Review</u>

Although the Federal Rules of Criminal procedure provide for the filing of a bill of particulars, the court's consideration of whether such a request should be granted is based upon "...whether the government's indictment sufficiently appraises the defendant of the charges to enable him to prepare for trial.  <u>United States v. Canino</u>, 949 F.2d 928, 948 (7th Cir.  1991) (citing <u>United States v. Kendall</u>, 665 F.2d 126, 134 (7th Cir.  1981)).  A bill of particulars is not required when information necessary for a defendant's defense can be obtained through "some other satisfactory form."  <u>Canino</u>, 949 F.2d at 948.

### (1)    Information contained in the indictment.

Each defendant has been provided with a copy of the Racketeering and Influence of Corrupt

Organizations (R.I.C.O.) indictment dated September 27, 2005. The indictment charges provides a lengthy introduction of the Latin King criminal enterprise, as well as a description of the method and means by which it operates. Each defendant has been provided with notice of the specific acts and allegations against him in the indictment. A summary of the nature of the charges, dates, and reference to the specific racketeering act is included in the indictment. Each defendant is given details of the charges, date, location, specific victims (where appropriate) and statutes violated with the description of each of the racketeering acts comprising the R.I.C.O. violations in Counts 1 and 2. The specific acts of drug dealing, weapons possession, alleged against specific defendants in Counts 4 to 38 are summarized with reference to dates and nature of the violations.

       **(2)**      **Information contained in the discovery.**

Each of the defendants have been provided with discovery in this matter. The discovery is generally organized according to the predicate act  The discovery provides information about the date and location of the offenses, as well as names of participants and witnesses. The discovery has been provided in compliance with the open file policy of the U.S. Attorney's Office.

    **B.**     **Nature of the information sought by the defendants pursuant to Federal Rule of Criminal Procedure 7(f).**

The evidence sought by the various defendants falls into two general categories:

1.      As to Counts 1 and 2 of the indictment, information relating to each racketeering act involving the defendant and the identification of specific information as to the defendant's participation in the offense.

2.      As to Count 3, specific information about the time, place, dates, controlled substances and quantities involved in the "drug conspiracy", as well as all witnesses to the particular acts. Also requested is a request for the specific

20

information relating to the time frame of the individuals participation in the "drug conspiracy."

**C.      Argument**

In considering the defendants' request for a Bill of Particulars pursuant to Fed. R. Crim. P. 7(f), the court must evaluate whether the indictment sets forth sufficient facts and details to advise a particular defendant of the nature of the charges, thereby providing the defendant with notice of the criminal conduct alleged. The indictment itself need only set forth a "plain, concise and definite written statement of the essential facts constituting the offense charged." F.R.C.P. 7(c); see also Muyet, 945 F. Supp. at 598 (New York Latin Kings case). Additionally, if the information sought by the defendant is provided by the indictment or by some other pretrial disclosure, such as discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, a Bill of Particulars is not required. Id., (citing United States v. Bortnovsky, 820 F.2d 572, 574 (2nd Cir. 1987)). In the context of a drug conspiracy, an indictment for violations of 21 U.S.C. §§ 841 (a) and 846 ". . .need only allege the conspiracy to distribute drugs, the time frame in which it allegedly was operated and the statute violated. No specific overt act need be alleged." Canino, 949 F.2d at 948 (citing United States v. Dempsey, 806 F.2d 766 (7th Cir. 1986)).

The filings of the defendants clearly establish that the defendants seek the details of how the government intends to prove above-described offenses and is merely a subterfuge to obtain the government's witnesses, theories, and evidentiary details of its case. The use of a Bill of Particulars is not a legitimate means to obtain specific details about how the government intends to prove the allegations of its case against the particular defendant at trial. See United States v. Balogun, 971 F. Supp. 1215, 1227 (N.D. Ill. 1997).

Case 2:05-cr-00240-LA    Filed 12/22/06    Page 22 of 67    Document 716

In the context of this case, the majority of the information contained in the discovery has been categorized as to specific predicate acts for the benefit of all parties. The defense attorneys have also been provided with indexes related to audio and videotaped conversations and/or surveillance. This enables the individual defendant to identify which monitored conversations may be relevant to that particular defendant.

In light of the above, as well as the specific nature of the allegations contained in the indictment, the defendants have not presented a basis for the specific information requested in their motions for a bill of particulars. The request of the defense is essentially that the government provide counsel with a trial outline of evidence, witnesses and all other materials which it seeks to use against the particular defendants. Courts have consistently held that "[i]t is improper to use a Bill of Particulars to compel the government to disclose the manner it will prove the charges or preview its evidence or legal theory." United States v. LaMorte, 744 F. Supp. 573, 577 (S.D.N.Y. 1990).

### D. Information as to the nature and quantity of drugs and transactions pertaining to individual defendants.

Many of the defendants seek specific details regarding the date, place, location and specific drug transactions including the nature and quantity of the drugs involved. It is clear that they are not entitled to this information. The court in United States v. Edwards, 105 F.3d 1179, 1181 (7th Cir. 1997) addressed this precise issue, holding that an indictment for a conspiracy to distribute drugs need not identify the controlled substances or the quantities involved. An indictment which alleges a conspiracy to distribute drugs is sufficient if it alleges the time frame in which it is operated as well as the statute violated. See Dempsey, supra, 806 F.2d at 769. Accordingly, the defendants'

22

request for a Bill of Particulars should be denied.

## III.  Motions to Compel Disclosure of Confidential Informants.

Several defendants have filed motions requesting that the court order the government to disclose a variety of information related to the use of informants, including the identity of the informant, and generally whether any informant has given the government or its agents any information or assistance in the prosecution or investigation of any event relevant to this case.[3] (See e.g., Defendant John Garcia's Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives and Cooperating Individuals Doc. (564).  For example the motion of Defendant John Garcia requests extensive information related to any informant *regardless of whether the informant is a witness*, who also including any informant who may have provided assistance to the government.)  In addition, several defendants moved to compel disclosure of any confidential informant who was a participant in the crimes charged in the indictment.  Because the defendants have not met their burden of showing that a particular informant's testimony is material to the defense, the defendants' motion to disclose the identity of confidential informants should be denied.

The Supreme Court has held that when "the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  Roviaro v. United States, 353 U.S. 53, 60-61 (1957).  However, the government is not required to disclose the identity of a confidential informant unless the defendant shows that the informant's testimony is "material to the defense."

---

3 Defendants, Carlos Avila,  Doc. 684; Jorge Barragan, Doc. 664; Hugo Del Portillo, Doc. 574; John Garcia, Doc. 564; Gonzalo Mejia, Doc. 551; Israel Moreno, Doc. 579; Bobby Palacios, Doc. 620; Joe Sanchez, Doc. 537; and Jesus Tello, Doc. 612 have filed this motion.

23

United States v. Saa, 859 F.2d 1067, 1073 (2nd Cir. 1988); United States v. Russotti, 746 F.2d 945,

949 (2nd Cir. 1984) ("an informant's identity need not be disclosed unless 'essential to the defense'")

(quoting Scher v. United States, 305 U.S. 251, 254 (1938)). "The defendant bears the burden to

demonstrate the need for the "extraordinary remedy of disclosure." United States v. Muyet, 945 F.

Supp. 586, 601-02 (S.D. New York 1996) (Latin King prosecution). "A defendant does not satisfy

this burden by merely showing that the informant was a participant in and witnessed to the crime

charged." Id. (citing Saa 859 F.2d at 1073).

      In the case at hand, the government has agreed to disclose 60 days prior to trial the identity

of all confidential informants that the government intends to call as a witness during its case in chief.

When a testifying confidential informant is disclosed, the defense will be provided with any

relevant Giglio material at that time, such as proffer agreements, consideration received, etc.

Beyond this, the defendants have failed to satisfy their burden of showing that the testimony of any

confidential informant would be material to their defense. In a RICO case involving the Latin Kings

in New York, the district judge emphasized that "mere speculation . . . that the informer may

possibly be of some assistance does not overcome the strong public interest in protecting

informants." Muyet, 945 F. Supp. at 602 (quoting United States v. Martinez, 634 F. Supp. 1144,

1150 (S.D. New York 1986)). This is particularly true in view of the allegations of the indictment

that members of the Latin King Enterprise use violence and threats of violence against individuals

known to be witnesses against them. Indeed, two of the predicate acts specifically allege violations

of 18 U.S.C. § 1512 (intimidation of witness) (See Predicate Acts 38 and 47). Therefore, the

defendants' motions to compel disclosure of confidential informants should be denied.

**IV.**     **Motion For Pre-trial Santiago Hearing**

Defendants Gregorio Acosta, Doc. 586; Carlos Avila, Doc. 686; Jorge Barragan, Doc. 667, 671; Hugo Del Portillo, Doc. 576; John Garcia, Doc. 566; Juan Gonzalez, Doc. 632, 633; Richard Kerner, Doc. 655; Bobby Palacios, Doc. 620; and Joe Sanchez, Doc. 532, have moved for pretrial disclosure and pretrial determination of admissibility of co-conspirator statements pursuant to Fed. Rule 801(d)(2)(E). The United States respectfully requests that this Court deny the defendants' motions for a pre-trial hearing to determine the admissibility of statements made by indicted and unindicted co-conspirators. Such a hearing is unnecessary, presents a potential delay of the proceedings, and is premature at this juncture.

For statements of co-conspirators to be admissible, the government must convince the court, as a preliminary matter and by a preponderance of the evidence that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000); United States v. Mojica, 185 F.3d 780, 788 (7th Cir. 1999).[1] The statements offered pursuant to 801(d)(2)(E) may themselves be considered by the court in making its decision on admissibility. Bourjaily, 483 U.S. at 181; Godinez, 110 F.3d at 454-5; Stephenson, 53 F.3d at 843; United States v. Brookins, 52 F.3d 615, 623 (7th Cir. 1995); Zambrana, 841 F.2d at 1344-5.

The Court has several procedural options for determining the admissibility of co-conspirator

---

[1]See also United States v. Godinez, 110 F.3d 448, 454 (7th Cir. 1997); United States v. Powers, 75 F.3d 335, 339 (7th Cir. 1996); United States v. Stephenson, 53 F.3d 836, 842 (7th Cir. 1995); United States v. Cox, 923 F.2d 519, 526 (7th Cir. 1991); Garlington v. O'Leary, 879 F.2d 277, 280 (7th Cir. 1989); United States v. Zambrana, 841 F.2d 1320, 1343 (7th Cir. 1988); United States v. Van Daal Wyk, 840 F.2d 494, 496 (7th Cir. 1988); United States v. Shoffner, 826 F.2d 619, 627 (7th Cir. 1987).

statements. First, after reviewing a proffer submitted by the government, the Court may admit the statements subject to a subsequent determination based on all the evidence at trial that the government has proved the foundation elements by a preponderance. Second, the Court may rule on the admissibility of the statements as they are presented, based on the evidence adduced to that point. Third, the Court may hold a preliminary hearing to consider all the evidence outside the presence of the jury. Fourth, without any proffer, the Court may conditionally admit the statements subject to final determination of the foundation at the close of the case. Stephenson, 53 F.3d at 842; *Cox*, 923 F.3d at 526; Shoffner, 826 F.2d at 628-30; United States v. Andrus, 775 F.2d, 825, 836-7 (7th Cir. 1985); United States v. Coe, 718 F.2d 830, 836-7 (7th Cir. 1983). Though the Seventh Circuit has identified these several alternatives, it has oftentimes discouraged "a full blown pre-trial hearing, as inefficient and potentially duplicative." United States v. Hunt, 272 F.3d 488, 494 (7th Cir. 2001). Because the potential statements sought to be introduced by the government will be determined by the available evidence and trial testimony the government believes that the district court is in the best position to determine the appropriate admissibility of these statements.

In any event, at this time, the government has not identified, which (if any) co-conspirator statements it plans to use in its case in chief. Therefore, the defense request for an early *Santiago* proffer regarding co-conspirator statements is premature at this time.

**V.     Motion to Disclose Legal Instructions Provided to the Grand Jury and Grand Jury Minutes and Venire Lists.**

Defendants Gregorio Acosta, Doc. 595: Nicholas Acosta, Doc. 562; Carlos Avila, Doc. 694; Richard Kerner, Doc. 653, 657; Joe Sanchez, Doc. 539; and Jesus Tello, Doc. 611, have requested

that the court order disclosure or _in camera_ review of the legal instructions given to the grand jury as to the elements of the indictment and in general, grand jury minutes. For example, Gregorio Acosta seeks disclosure of unauthorized persons present during grand jury deliberations. Nicolas Acosta seeks disclosure of the grand jury lists to determine if the panel was illegally constituted. Defendant Jorge Barragan and Jesus Tello seeks disclosure of the legal instructions and transcripts related to the legal instructions given to the grand jury. Finally, Richard Kerner seeks grand jury minutes and requests the opportunity to inspect the grand jury lists. Other than the serious nature of the charges, a circumstance which would exist in any multi-defendant racketeering prosecution, the defendants have failed to make any showing which would warrant disclosure of the grand jury material sought.

As a preliminary matter, there is a presumption of regularity which attaches to the grand jury proceedings. See _Costello v. United States_, 350 U.S. 359, 363 (1956). Disclosure of grand jury matters is governed by Rule 6(e)(c)(ii) of the Federal Rules of Criminal Procedure. Any disclosure must conform to the provisions of 18 U.S.C. §3500. The defendant has the burden of demonstrating a compelling or particularized need for the grand jury information sought. See _United States v. Lisinski_, 728 F.2d 887, 893 (7th Cir.), _cert. denied_, 469 U.S. 832 (1984).

Under the legal standards applicable to disclosure of grand jury proceedings, the defendant in their motions have failed to show a particularized need justifying the disclosure of the legal instructions to the grand jury, or any grand jury material, either _in camera_ or otherwise.

"There is a presumption of regularity in grand jury proceedings... and a defendant seeking dismissal of an indictment on the grounds of grand jury error therefore faces a very heavy burden." _United States v. Trie_, 23 F. Supp. 2d 55, 61 (D.D.C. 1998). Even if a defendant can establish error at the grand jury stage, "dismissal of the indictment is appropriate only if it is established that the

Case 2:05-cr-00240-LA   Filed 12/22/06   Page 28 of 67   Document 716

violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988). See also, United States v. Gillespie, 974 F.2d 796, 801 (7th Cir. 1992) (dismissal of an indictment based upon prosecutorial misconduct before the grand jury is limited to instances "where the misconduct amounted to a violation of one those few, clear rules which were carefully drafted and approved by this court and by Congress to ensure the integrity of the grand jury's functions."). Thus, "nothing short of a violation of laws or procedural rules regulating grand jury matters will permit a court to exercise its supervisory authority in the grand jury arena." Gillespie, 974 F.2d at 801. In addition, even assuming that the defense establishes the existence of erroneous instructions given to the grand jury, the Supreme Court in Bank of Nova Scotia held "that an indictment may not be dismissed for prosecutorial misconduct in grand jury proceedings absent prejudice to the defendant." 487 U.S. at 255. The defendants have failed to make any showing of either any alleged misconduct and/or any prejudice to them.

Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure permits disclosure of matters occurring before a grand jury "at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Dennis v. United States, 384 U.S. 855, 870 (1966); United States v. Alexander, 860 F.2d 508, 512 (2d Cir. 1988). In requesting to review grand jury materials, the defendant must show a "particularized need" for disclosure that outweighs the government's interest in maintaining the secrecy of the grand jury proceedings. Alexander, 860 F.2d at 513. "The mere suspicion that the grand jury may not have been properly instructed with respect to [a] legal definition" is insufficient to entitle the defendant to disclosure of grand jury materials. See United States v. Buchanan, 787

28

F.2d 477, 487 (10th Cir. 1986); Trie, 23 F. Supp. 2d at 62. See also, United States v. Mariani, 7 F. Supp. 2d 556, 567-68 (M.D. Penn. 1998); United States v. Winchester, 407 F.Supp. 261, 277 (Del. 1975) (denying request for grand jury instructions as it was based upon conjecture and surmise); Cf. United States v. Warren, 16 F.3d 247, 253 (8th Cir. 1994) (finding that the prosecutor was under no legal obligation to give the grand jury any instructions).

In an analogous situation, a district judge in the District of Columbia considered the issue of whether disclosure of legal instructions to the grand jury was warranted. In Trie, the defendant contended that the allegations of a conspiracy indictment contained overt acts related to "soft money" election contributions in violation of the Federal Election Campaign Act, while the indictment only alleged that the conspiracy was for the purpose of violating two sections of the act related to "hard money" contributions. Rejecting the defendants claim for disclosure of legal instructions to the grand jury, the court explained as follows:

> To the extent that Mr. Trie's complaint rests on the allegations related to soft money donations contained in the section of count 1 enumerating overt acts taken in furtherance of the alleged conspiracy, see indictment at 8-17, his argument for dismissal necessarily fails. It is established that overt acts may be wholly innocent... and the fact that the overt acts alleged here may include actions taken with respect to soft money donations therefore is irrelevant.

23 F. Supp. 2d at 62. The court explained that "since the indictment is facially valid and Mr. Trie's claims with respect to hard and soft money does not justify dismissal of the indictment,... Mr. Trie has not established any particularized need for the grand jury instructions. ..." Id. The court went on to state that "it of course is conceivable that the grand jury was not instructed that the applicable provisions of FECA apply only to 'contributions' as defined by FECA and that they do not apply to 'soft money' donations. But the mere suspicion that the grand jury may not have been properly

29

instructed with respect to the legal definition of contribution is insufficient to establish that Mr. Trie is entitled either to dismissal of the indictment or to disclosure of grand jury materials."    23 F. Supp. 2d at 62.

Similarly, as explained previously in this brief, the indictment in this case is valid on its face, and supports no inference that the grand jury has been misinstructed in any fashion.  Accordingly, the United States submits that no inference of prosecutorial misconduct or misinstruction to the grand jury can be drawn from the facts submitted in support of the defendants' motion.  Under the authorities cited above, this mere suspicion is insufficient to warrant disclosure, either in camera or otherwise.  Therefore, the defendants motion to disclose matters occurring before the grand jury should be denied.

The government has agreed to disclose the grand jury transcripts of witnesses who will be testifying at trial at least thirty days in advance of trial.  The defendant is entitled to no more.

Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure allows disclosure of otherwise prohibited matters occurring before the grand jury at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.  Grand jury secrecy is needed to encourage witnesses to come forward and testify fully and truthfully, to prevent those about to be indicted from fleeing or trying to influence grand jurors and to insure that targets who are later exonerated are not held up to public ridicule.  Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).  To preserve the grand jury, the secrecy is not broken "except where there is a compelling necessity" for the material.  Hernly v. United States, 832 F.2d 980, 984 (7th Cir. l987). Such necessity must be shown with particularity.  *Id.*

As previously noted, to the extent that the instant motion requests testimony of any government witness who will testify at trial, the government will provide this testimony to all of the defendants at least thirty days before trial. In support of their motion to obtain additional grand jury information, the defendants allege that there were witnesses called to the grand jury of whom the defendant is unaware. By the very nature of the grand jury, the defendant is unaware of which witnesses were called to testify. The defendant also asserts that the review of the transcripts may lead to the discovery of exculpatory information. This statement is pure conjecture on the part of the defendant.

The government is aware of its continuing obligations under *Brady, Bagley, Giglio* and their progeny. The government has disclosed and will continue to disclose all exculpatory and impeachment material in its possession. The grand jury transcripts are Jencks material and the government will disclose them thirty days before trial. To the extent that the defendants may challenged the validity of the indictment or grand jury proceedings, they have not overcome the strong presumption of regularity which attaches to grand jury proceedings nor have they demonstrated a "compelling necessity" to require disclosure and therefore their motions should be denied. See United States v. Lisinski, 728 F.2d 887, 893 (1984).

Finally defendant, Gregorio Acosta, Doc. 595, requests the government disclose the identity of any unauthorized persons present before the grand jury. The government was not present during deliberations but for the reasons stated previously as the grand jury secrecy the government would ask that the court deny the defendant's motion. Nicholas Acosta Doc. 562 and Richard Kerner, Doc. 657, also request permission to inspect the grand juror selection lists pursuant to The Jury Selection and Service Act of 1968. The government does not have control over these lists as they are under the

31

control of the Judiciary and is unable to provide them to the defendants.  The government believes

that the defendants do have a right to inspect the selection lists for the grand jury.

**VI.    Motion to Dismiss Racketeering Act 10 and/or Count Two RICO Conspiracy because Conspiracy to Commit Murder Predicate  Relieves the Prosecution of Proving all the Elements of RICO Conspiracy.**

Defendants Carlos Avila, Doc.696; Desmond Cornelius, Doc. 615; Hugo Delportillo, Doc.

572; Luis Garcia, Doc. 609; Gonzalo Mejia, Doc. 554; Joe Sanchez, Doc. 544; and Jose Tello, Doc.

607, 608, moved the court  to dismiss Count Two and/or dismiss  predicate act 10 from

consideration with Count Two. Predicate Act 10 of Count One alleges a conspiracy to violate RICO.

 The defendants' argument is without merit.  The defendants contend first that no inchoate offense

can be "racketeering activity" as 18 U.S.C. § 1961(1)(A) defines that term, and second that use of

conspiracy as a predicate is particularly inappropriate when the federal crime is a RICO conspiracy

violating § 1962(d).   The defendants' argument  was reviewed and rejected by the Seventh Circuit

in United States v. Warneke, 310 F.3d 542 (7th Cir. 2002).  Objections to the use of conspiracies as

predicate crimes have been made in other circuits, uniformly without success. See United States v.

Ruggiero, 726 F.2d 913, 918-20 (2d Cir.1984); United States v. Manzella, 782 F.2d 533, 537-38 (5th

Cir.1986); United States v. Licavoli, 725 F.2d 1040, 1044-45 (6th Cir.1984).

First, it is well established that a conspiracy can serve as a racketeering act in support of a

substantive violation of the RICO statute.  See e.g. United States v. Ruggiero, 726 F.2d 913, 918-20

(2d Cir. 1984) (conspiracy to commit murder in violation of New York state law is an "act

involving" murder and therefore may constitute "racketeering activity" within the meaning of the

RICO statute); United States v. Licavoli, 725 F.2d 1040, 1044-45 (6th Cir. 1984) (conspiracy to

commit murder in violation of Ohio State law may be racketeering act under 18 U.S.C. § 1961(1)(A)

for a RICO charge). In addition, 18 U.S.C. § 1962(d) makes it a crime to conspire to commit a substantive violation of the RICO statute. Section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. In Salinas v. United States, 118 S.Ct. 469 (1997) the Supreme Court held that in order for a defendant to be found guilty of a § 1962(d) violation, he need not have specifically conspired or agreed to commit two or more racketeering offenses. In Salinas, the court noted that "the elements that predominate in a subsection (c) violation (of § 1962) are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Salinas, 118 S.Ct. At 476. If, to be convicted of conspiracy to violate § 1962(c), it were necessary to prove an agreement to violate two or more of the charged racketeering acts, this would run counter to the longstanding law of conspiracy. As Salinas explains:

> A conspiracy may exist even if a co-conspirator does not agree to commit or facilitate each and every part of a substantive offense. ... If co-conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. ... "Plainly a person may conspire for the commission of a crime by a third person."... A person, moreover, may be liable for conspiracy even though he was incapable of committing the substantive offense.

Id. at 477-78.

Because one can be found guilty of conspiracy to violate substantive RICO without actually committing or even conspiring to commit any racketeering acts, the defendants attempt to remove conspiracy predicate from the RICO conspiracy must fail. This is because in a RICO case one can be found guilty of RICO conspiracy without having committed, or even having agreed to commit, any racketeering acts. Moreover, unlike a substantive violation of a the CCE statute, which requires activity "in concert" with others, a substantive RICO violation can be committed by one individual.

33

<u>See</u> 18 U.S.C. § 1961(4) ("enterprise includes any individual...") and <u>Salinas</u>, supra ("... an enterprise under § 1962(c) can exist with only one actor to conduct it . . ."). Consequently, the defendants' assertion that each defendant must be proven to have agreed to participate in the commission of two or more predicate acts is legally incorrect.

In addition the jury instructions for the RICO and RICO conspiracy clearly spell out the difference. The Seventh Circuit pattern jury instructions for the section 1963(d) RICO conspiracy charge, which do not include any direction that jurors unanimously agree on which predicate acts gave rise to a pattern of racketeering activity. Fed.Crim. Jury Instr. 7th Cir. § 1962(d). The pattern instructions include unanimity instructions only for a substantive RICO charge under section 1963(c). There is a reason for the difference: a conspiracy charge under section 1962(d) focuses on the act of a defendant's agreement to engage in racketeering activity, rather than on the racketeering acts themselves. <u>United States v. Geicer</u>, 923 F.2d 496, 500 (7th Cir.1991) ("Section 1962(d), like all conspiracy provisions, has as its target the act of agreement--here, the agreement to engage in activity that implicates section 1962(c)."). Thus, in <u>Geicer</u>, the Seventh Circuit held that specific predicate acts need not be alleged nor proved for a section 1962(d) charge. <u>Id</u>. Similarly, the Supreme Court in <u>United States v. Salinas</u>, 522 U.S. 52, 63-65, (1997) held that a defendant need not have actually committed nor even agreed to commit the two or more predicate racketeering acts required by section 1962(c) in order to be punished under section 1962(d); rather, all that is required is that the defendant "adopt the goal of furthering or facilitating the criminal endeavor." It would be anomalous to require jurors to unanimously agree on which predicate acts constituted the pattern of racketeering activity which was the object of the conspiracy, when the prosecution is not required to prove or even identify those predicate acts. <u>United States v. Warner</u>, 2006 WL 2583722 (N.D.Ill.,

34

September 6, 2006).

Finally, in Ruggiero, 726 F.2d at 923, the Second Circuit specifically approved the use of

conspiracy offenses as racketeering offenses to a RICO conspiracy. Similarly, the Seventh Circuit in

Neapolitan explained:

> A § 1962(d) conspiracy is not a new generic category of
> conspiracy but a specific goal of traditional conspiracy law. This
> section of RICO is capable of providing for the linkage in a
> proceeding of a number of otherwise distinct crimes and/or
> conspiracies through the concept of enterprise conspiracy.

Neapolitan, 792 F.2d at 501 (emphasis added). For the reasons set forth above, the United States

respectfully requests that this court deny the defendants' motion to dismiss racketeering act 10, and

as well as Two of the indictment.

## VII.  Motion for Disclosure of Jencks Act Material and Grand Jury Transcripts of Witness Testimony.

Defendants, Gregorio Acosta, Doc. 597; Carlos Avila, Doc. 688; Jorge Barragan, Doc. 666;

John Garcia, Doc. 570; Juan Gonzalez, Doc. 635; Richard Kerner, Doc.659; Martin Martinez, Doc.

624; Gonzalo Mejia, Doc. 550; and Joe Sanchez, Doc. 527, have moved for an order requiring the

government to produce material under the Jencks Act, 18 U.S.C. §3500, as well as the transcripts of

the prior grand jury testimony of the witnesses who will testify during the government's case.

Specifically, under the Jencks Act, the government is required to produce a transcript of the

witness's grand jury testimony after the witness has completed his or her direct testimony. See 18

U.S.C. §3500. However, in accordance with the long-standing practice in this district, the United

States Attorney's Office ordinarily provides grand jury transcripts related to government witnesses

24 hours prior to their testimony. See e.g., United States v. Nanz, 471 F. Supp.968, 971 (E.D. Wis.

1979); United States v. Magaw, 425 F. Supp. 636, 639 (E.D. Wis. 1977).

35

While not all defendants have filed the statement required by Local Rule 6.02, the United States has informed defense counsel assigned to the discovery committee of its position on this issue. The government has advised counsel that depending on the volume of grand jury transcripts that must be produced prior to a particular trial, the government will provided such transcripts <u>earlier</u> than its normal practice in conjunction with the scheduling of a trial date and when the government has determined which witnesses will be called in its case-in-chief. The government will provide Jenks Material/ Grand Jury transcripts no later than 30 days prior to trial and possibly sooner. The defendants cite no authority for the proposition that the court is empowered to order an earlier disclosure of such material.[4] Accordingly, the defendants' motion for early disclosure of Jencks Act material should be denied.

**VIII.  Motion for Disclosure of Agreements Between the Government and Government Witnesses.**

Several defendants, including Jorge Barragan, Doc. 672; Desmond Cornelius, Doc. 621; John Garcia, Doc. 564; and Joe Sanchez, Doc. 535, have filed motions requesting that the court order the disclosure of any agreements between the government and witnesses it may call in its case. These motions should be summarily denied based upon the defendants' failure to comply with Local Rule 6.02, and Civ. L.R. 37.1. The government has informed counsel for the discovery committee that it is aware of its obligations under <u>Brady</u>, <u>Giglio</u>, <u>Kyles</u>, and its progeny, and will comply with those obligations and provide any  agreements on an ongoing basis and in any event will disclose those agreements and or consideration no later than sixty days prior to trial .

**IX.  Motions for Pretrial Notice of Government's Intent to Use Evidence of Other**

---

4 The majority of the defendants raising this issue have requested the production of Jencks materials <u>at</u> <u>least</u> <u>30</u> <u>days</u> prior to trial, which the government considers to be reasonable.

**Crimes.**

Defendants, Nicolas Acosta, Doc. 557; Armando Jorge Barragan, Doc. 663; Desmond Cornelius, Doc. 622; Hugo Del Portillo, Doc. 575; John Garcia, Doc. 567; Juan Gonzalez, Doc. 636; Richard Kerner, Doc. 656; Martin Martinez, Doc. 628; Gonzalo Mejia, Doc. 555; Israel Moreno, Doc. 581; and Joe Sanchez, Doc. 529, have filed motions requesting that the court order the government to provide, in advance of trial, notice of its intention to use evidence falling within the parameters of Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therein. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Preliminarily, the defendants' motions for pretrial notice of the government's intent to use Rule 404(b) evidence should be denied for failure to comply with Local Rules 6.02, Civ.L.R. 37.1. The government has previously indicated its position to the discovery committee that it would agree to provide within sixty days prior to trial notice of the government's intent to introduce evidence of other crimes, wrongs or acts which fall within the scope of Rule 404(b). Accordingly, the defendants' motion should be denied as moot.

Although the government has agreed to provide pretrial notice of its intent to use Rule 404(b) evidence, the defense should not be entitled to summaries of the government's evidence which are directly related to the crimes charged in the indictment, and, therefore, does not fall within the scope of Rule 404(b). As explained by the Second Circuit Court of Appeals in <u>Diaz</u>, <u>supra</u>:

> [The] rule [Rule 404(b)] is not controlling here, for "an act that is

37

alleged to have been done in furtherance of the alleged conspiracy
. . . is not an 'other' act within the meaning of Rule 404(b); rather, it
is part of the very act charged." <u>United States v. Concepcion</u>, 983
F.2d 369, 392 (2nd Cir. 1992). Where, as in this case, "the indictment
contains a conspiracy charge, 'uncharged acts may be admissible as
direct evidence of the conspiracy itself.'" <u>United States v. Miller</u>, 116
F.3d 641, 682 (2nd Cir. 1997) (quoting <u>United States v. Thai</u>, 29 F.3d
785, 812 (2nd Cir. 1994)).

<u>Diaz</u>, <u>supra</u> at p. 8.

As part of discovery, the government has and will continue to provide reports regarding any

uncharged acts that the government believes is admissible as direct evidence of the conspiracy itself.


## X.     Motion to Strike Surplusage from the Indictment

Defendant Luis Garcia, Doc. 613, moves the court to strike surplusage from the indictment.

Federal Rule of Criminal Procedure 7(d) provides that "[t]he court on motion of the defendant may

strike surplusage from the indictment."  The Advisory Committee note to subdivision (d) explains

that the rule introduces a means of protecting the defendant against immaterial or irrelevant

allegations in the indictment which may, however, be prejudicial.  This provision is discussed in

<u>United States v. Bucey</u>, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988):

> Allegations will be stricken  as surplusage only if "it is clear that  the
> allegations are not relevant to  the charge and are  inflammatory  and prejudicial."
> Wright & Miller,   <u>Federal  Practice  and Procedure</u>, s. 127 (1982).   Simply  put,
>  legally  relevant  information  is  not surplusage. <u>United  States v. Richter</u>, 610
> F.Supp. 480, 496, (N.D.Ill. 1985), <u>aff'd</u>, <u>United States v. Mangovski</u>, 785 F.2d 312
> (7th  Cir.), <u>aff'd</u>, <u>United States v. Konstantinov</u>, 793 F. 2d 1296 (7th Cir.), <u>cert.</u>,
> <u>denied</u>, 479  U.S.  855, 107  S.Ct. 191,  93 L. Ed.  2d 124, (1986); <u>See also</u>,  <u>United
>  States  v. Climatemp,  Inc</u>., 482  F. Supp. 376, 391  (N.D.  Ill. 1979), <u>aff'd</u>, 705 F.
> 2d 461 (7th  Cir.), <u>cert.</u>, <u>denied</u> <u>sub. nom.</u> , <u>Fakter v. United States</u>, 462 U.S. 1134,
> 103  S.Ct. 3116, 77  L. Ed. 2d 1370 (1983).   Consequently, due to the exacting
> standard,  motions to strike information as surplusage are rarely granted.  <u>See United
> States v. Fishback  and Moore, Inc</u>., 576  F. Supp. 1384 (W.D. Pa. 1983); Wright &
> Miller, <u>Federal  Practice  and  Procedure</u>, sec. 127 (1982). (1986).

38

In the instant case, Garcia's motions to strike language as surplusage should be denied. Although much of the language in the indictment will of course be prejudical, in order to be stricken as surplusage, the language must be both prejudicial and irrelevant. Because the language that defendants attack is legally relevant, it is properly contained in the indictment.

Defendant Garcia motion to strike surplusage asks the court of strike all of the language in Paragraphs 4 through 12 of the indictment. These are the sections of Count One that are entitled "Introduction", "Purpose of the Enterprise", and "Manner and Methods." As grounds, Garcia asserts that the language in this section does not set forth "essential facts constituting the offense charge, but is rather intended to prejudice prospective jurors. This argument is misplaced and Garcia's motion to strike this section of the indictment should be denied.

An examination of the indictment shows that the language found at paragraphs 4 through 12 sets forth allegations about the composition, structure, and membership of the Milwaukee Latin Kings and is relevant to the identity of the RICO enterprise described in the indictment. The words contained in this section are used to describe the organization, and they explain the nature of the enterprise that is at the center of this RICO case. Because the language in this section is inextricably intertwined with the allegations that are set forth in this indictment, it is highly relevant to the prosecution, and consequently not surplusage. Based on the foregoing, the motion of defendant Garcia to strike language in the indictment should be denied.

## XI. Defendant's Motion to Compel Discovery

Several defendants[5] have filed motions requesting that the court enter an order

---

[5] The motions for discovery were filed by defendants, Gregorio Acosta, Doc. 584; Nicolas Acosta, Doc. 561; Ramon Alvarado, Doc. 596; Carlos Balentine, Doc. 545; Florentino Castillo, Doc. 642; Desmond Cornelius, Doc. 621; Hugo Delportillo, Doc. 573; John Garcia,

39

compelling the government to produce "discovery materials demanded by the defense, excluding testimony of witnesses and other evidence for which adequate discovery has not been produced, and such other relief as may be just pursuant to Federal Rules of Criminal Procedure, and United States Constitution." The defendant's motion should be denied because the government has complied with and will continue to supply requested discovery material after consultation with defense counsel. The government will comply in a timely fashion with its obligations under the open file policy, Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act, as well as its obligations to disclose exculpatory evidence under <u>Brady</u>, <u>Giglio</u> and <u>Kyles</u>. In particular, the defendants allege that the government's index to discovery is insufficient to place the defendant on notice of the evidence that will be used against him at trial. However, the defendant cites no authority for the proposition that the government is required to organize or index its discovery materials in any particular fashion. In fact, as explained in the government's response to the defendants' request for a bill of particulars,[6] case law consistently holds that the government is not required to provide a road map or outline of the evidence it will seek to introduce during its case in chief or explain the theory of its prosecution to the defense. The government's index was computer generated and admittedly is incomplete, may reports may not appear on the index as the report may have been hand written or in a format unfamiliar to the scanning program. The government has always taken the position that the index should not be relied upon as the final

---

Doc. 568; Richard Kerner, Doc. 652; Gonzalo Mejia, Doc. 549; Joe Sanchez, Doc. 534; and Jesus Tello, Doc. 619.

[6]As is outlined in the government's response to the defendants' request for a bill of particulars, although not required to do so, the government has attempted to organize the discovery by use of a numbering system by act or count to identify different categories of reports. The government has always advised that it's index is not definitive and some pages may not be listed.

40

source and counsel should review the entire discovery as everyone has been charged with RICO conspiracy. In an effort to assist the process, the government will provide each defendant who filed a request for a bill of particulars with a copy of those reports that directly name or implicate that defendant in the current indictment. Those reports will not be bates stamped; additionally the government will begin the process of locating reports within the bates stamped discovery so that the defendants can cross referenced them, as well as continuing to supplement the discovery.

## XII.    Defendant's Motion to Disclose Mail Interception or Mail Cover

Defendant, Gregorio Acosta, Doc. 594, has filed the instant motion asking the government to disclose whether any mail intended for the defendant was intercepted or whether a mail cover occurred in the instant case. The government responds that the United States Postal Inspection Service nor any other law enforcement agency conducted a mail cover as part of this investigation. The government as part of this investigation has recovered mail and letters from residences during search warrants and prison cell searches. The discovery references various letters and mail and those items will be stored with the physical evidence for viewing.

## XIII.    Defendant's Motion for the Disclosure of Exculpatory Evidence

Several defendants have made a very broad request under the auspices of Rule 16(a)(1) of the Federal Rules of Criminal Procedure, Brady v. Maryland and United States v. Agurs, for the production of any evidence or information which is favorable to the accused.

The United States is mindful of the well-established Brady rule that "the government has an obligation to turn over evidence in its possession that is favorable to the accused and material to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady, however, does not require

41

a prosecutor to turn over all evidence that might benefit the defendant. <u>United States, v. Reye</u>s, 270 F.3d 1158, 1166 (7th Cir. 2001).

In accord with its open file policy, the government has provided to the defendants through their attorneys all witness statements and documentary evidence in its possession so that the defendant has ample information for trial preparation and can avoid any surprise. The government acknowledges and will continue to honor its ongoing discovery obligations.

The following is the government's paragraph by paragraph response to information requested by the defendants:

1. The government agrees to turn over the prior criminal convictions of its witnesses pursuant to <u>Brady</u> and make inquiries of other impeachment material pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1970).

2. The government agrees to turn over statements of all promises, rewards, inducements or consideration for any testifying witness. Absent a specific showing of materiality, the government will not disclosure impeachment evidence relating to non-witnesses. <u>United States v. Coggs</u>, 752 F. Supp. 848, 849 (N.D. Ill 1990).

3. The government has furnished to the defendant all witness statements (other than grand jury witnesses and/or confidential informants) currently in its possession. Any related impeachment material for those witnesses covered by <u>Brady</u> or <u>Giglio</u> will likewise be disclosed to the defendant.

In <u>Brady</u>, the Supreme Court held that due process requires the prosecution to provide the defense, upon request, with any evidence favorable to the accused which is material either to guilt or punishment. *Id.* at 87; *see* also <u>Giglio v. United States</u>, 405 U.S. 150 (1972). The Supreme Court

42

subsequently held that the <u>Brady</u> rule applies to impeachment evidence as well as to exculpatory evidence. *See* <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).

However, <u>Brady</u> is a disclosure rule, not a discovery rule. *See* <u>United States v. Higgins</u>, 75 F.3d 332, 335 (7th Cir. 1996). "A prosecutor must disclose information favorable to the defense, but disclosure need not precede trial." *Id.* Disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material. *Id.*

In order to obtain discovery material under <u>Brady</u>, a defendant must first present evidence that impeaching material is contained within such material or that any material was suppressed by the government. <u>United States v. Romo</u>, 914 F.2d 889, 898-899 (7th Cir. 1990). Brady does not authorize the defendant to conduct a fishing expedition for exculpatory material based on nothing more than mere speculation. *See* <u>United States v. McDonnell</u>, 696 F. Supp. 356, 363 (N.D. Ill. 1988).

The government is following the open file policy in the instant case. It has turned over, and will continue to turn over, any and all exculpatory or impeachment evidence as defined by <u>Brady</u> and its progeny. No later than 60 days prior to trial, the government will disclose to the defendant the prior criminal convictions of its witnesses as well as statements of all promises, rewards, inducements or consideration for any testifying witness. At that time, it will also disclose other impeachment material pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1970), including plea agreements, proffer letters, and grants of immunity.

However, the government will not be turning over all information requested by the defense. Many of the defendant's requests are overly broad. "The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." <u>Bagley</u>, 473 U.S. at 675. "Brady does not

43

grant criminal defendants unfettered access to government files." United States v. Phillips, 854 F.2d 273, 277 (7th Cir. 1988). Moreover, "Brady does not require a prosecutor to divulge every scintilla of evidence that might conceivably inure to a defendant's benefit." United States v. Reyes, 270 F.3d 1158, 1166 (7th Cir. 2001).

The defendant has not made any showing that the prosecutor's office or its investigating agents are aware of or have control over some of the information sought. In Kyles v. Whitley, 514 U.S. 419, 437 (1995), the Supreme Court imposed a duty on individual prosecutors to learn of any favorable evidence known to others acting on the government's behalf. However, in United States v. Morris, 80 F.3d 1151 (7th Cir. 1996), the Seventh Circuit held that Kyles cannot be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue. Id. at 1169. A prosecutor is not required to provide evidence that she could not reasonably have had knowledge of or control over. United States v. Hamilton, 107 F.3d 499, 509 (7th Cir. 1997).

Finally, some of the information sought is a matter of public record to which the defendant has equal access. The government cannot be found to have suppressed evidence if the same information was available to the defendant through the use of reasonable diligence. See Morris, 80 F.3d at 1170.

Among the categories of information that the government will not be turning over are the records of the United States Probation Department or any state Department of Corrections/Probation Office. This is because the Seventh Circuit has held that "requiring disclosure of a presentence report is contrary to the public interest as it would adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused and from sources independent

44

of the accused for use in the sentencing process." <u>United States v. Greathouse</u>, 484 F.2d 805, 807

(7th Cir. 1973).  As a result, the government will not be seeking or disclosing probation records or

presentence reports.

The government also will not be disclosing the name and current whereabouts of any

eyewitness to the underlying events of this case whom the government does not anticipate calling as

a witness at trial, unless this individual is in possession of exculpatory or impeachment information.

 Similarly, the government will not be searching the files of other government agencies that have no

involvement in the investigation or prosecution at issue. *See* <u>Morris,</u> 80 F.3d at 1169.

In sum, the government acknowledges its obligations under *Brady* and its progeny, and will

continue to disclose all exculpatory and impeachment material as it becomes available.

## XIV.   Motion to Dismiss Due to Issue of Juvenile Jurisdiction.

Defendant Gonzalo Mejia, Doc. 554,  moves to dismiss the  indictment on the ground that in

prosecuting the defendant for adult criminal offenses, the government failed to comply with the

terms of the Juvenile Justice and Delinquency Act (the "JDA") which applies to juveniles who are

"alleged to have committed an act of juvenile delinquency."   18 U.S.C. § 5032.[7]   Juvenile

delinquency is defined as "the violation of a law of the United States committed by a person prior to

his eighteenth birthday which would have been a crime if committed by an adult."  18 U.S.C. §

5031.  Under the JDA, a juvenile alleged to have committed an act of juvenile delinquency "shall not

---

[7]Title 18 U.S.C. § 5031 provides that "for the purposes of this chapter, a 'juvenile' is a
person who has not attained his eighteenth birthday, or for the purpose of proceedings and
disposition under this chapter for an alleged act of juvenile delinquency, a person who has not
attained his twenty-first birthday, and "juvenile delinquency" is the violation of a law of the
United States committed by a person prior to his eighteenth birthday which would have been a
crime committed by an adult or a violation by such a person of § 922(x)."

be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that several circumstances have been met as enumerated in 18 U.S.C. §5032.

Recognizing that certain predicate acts of racketeering were allegedly committed prior to their eighteenth birthday, the defendants' allege that either those specific predicate acts or the indictment as a whole must be dismissed based upon the government's failure to request a transfer of the case to adult status pursuant to 18 U.S.C. § 5032. The defendant's contention is without merit because as to this defendant, the government will prove the commission of acts in furtherance of the racketeering enterprise, racketeering conspiracy after that individual's eighteenth birthday. Under those circumstances, the defendant's motion should be denied as premature pending the government's proof at trial that the defendant committed acts in furtherance of the RICO and RICO conspiracy after his eighteenth birthday. See, e.g., United States v. Doerr, 886 F.2d 944 (7th Cir. 1984).

"It is well established that federal courts have jurisdiction over conspiracies begun while a defendant was a minor but completed after his eighteenth birthday." United States v. Wong, 40 F.3d 1347, 1365 (2nd Cir. 1994). Noting that the crime of conspiracy is a "continuing crime," the Seventh Circuit in Doerr, 886 F.2d at 969 explained that "the Juvenile Delinquency Act does not . . . prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he was charged while still a minor. . . . Thus, once it is established that certain acts of the charged offense occurred after the defendant's eighteenth birthday, it is appropriate for the entire case to be tried in adult court, in accordance with adult rules of procedure and evidence." 886 F.2d at 969 (citing United States v. Cruz, 805 F.2d at 1464, 1475-77 (11th Cir.

46

1986)).

In addition, it is universally recognized that like a criminal conspiracy, "both substantive RICO and RICO conspiracy offenses are continuing crimes. See Wong, 40 F.3d at 1365; United States v. Moscony, 927 F.2d 742, 754 (3rd Cir. 1991) (substantive RICO is a continuing offense analogous to conspiracy); United States v. Rastelli, 870 F.2d 822, 838 (2nd Cir. 1989) (RICO conspiracy not complete until purposes accomplished or abandoned). Consequently, "no circuit has applied the JDA to an adult conspiracy or racketeering prosecution simply because a defendant's participation in the crimes began prior to his eighteenth birthday." United States v. Delatorre, 157 F.3d 1205, 1209 (10th Cir. 1998) (citations omitted). Although conspiracy and racketeering are continuing crimes, ". . . some demonstration of post-eighteen participation in such crimes is necessary to sustain a conviction against a defendant indicted prior to the age of twenty-one." 157 F.3d at 1209. As the court explained in Delatorre:

47

> Every court addressing the issue has required post-eighteen participation in "continuing crimes" because only such participation signals an adult defendant's ratification of pre-majority involvement in such crimes. . . . The government must introduce evidence, or what the First Circuit has referred to as "some discernable actus reus, be it action or (in the appropriate case) intentional inaction," . . . which will allow a reasonable jury to conclude that defendants participation in the conspiracy or racketeering enterprise continued after his eighteenth birthday. . . . Thus, a jury may not convict an adult defendant solely on the basis of "acts of juvenile delinquency," thereby eviscerating the protections afforded juveniles under the JDA. Instead, the jury must find post-majority conduct sufficient to establish that defendant participated in the conspiracy or racketeering enterprise after attaining the age of eighteen.

157 F.3d at 1209. Thus, "the relevant 'act' for purposes of determining federal jurisdiction under § 5032 is the crime charged in the indictment - - here, the substantive RICO and RICO conspiracy offenses alleged therein - - rather than the discrete predicate acts underlying those charges." Wong, 40 F.3d at 1365. "In other words, the JDA addresses the district court jurisdiction only with respect to a charged offense, not the individual acts comprising that offense or the evidence necessary to prove such acts." Delatorre, 157 F.3d at 1210. See also Doerr, 886 F.2d at 944 (holding that where an adult defendant is properly charged with a continuing crime, that defendant's pre-majority conduct is admissible on the same basis as post-majority conduct.).

Although a defendant's ratification of pre-majority involvement in racketeering activity may be based on uncharged conduct, defendant Mejia is specifically charged with participating in specific acts of racketeering after his eighteenth birthday. While the government will be required to prove at trial the defendant's post-eighteen participation in the continuing crimes charged in the indictment, the specific allegation that the defendant had post-eighteen involvement in these crimes is sufficient to withstand a motion to dismiss. Accordingly, the JDA is inapplicable to the present

48

charges and does not preclude the defendant being charged as an adult with the crimes of racketeering, conspiracy to commit racketeering, as well as drug conspiracy offenses charged in counts one, two, and three of the indictment. The defendant's motion to dismiss should therefore be denied pending the government's proof at trial.

**XV**. **Motion to Require the Government to Admit or Deny Whether any Evidence or Testimony Used by the Government was Unconstitutionally Obtained**

Defendants Gregorio Acosta, Doc. 590; Nicholas Acosta, Doc. 558; Carlos Avila, Doc. 687; Jorge Barragan, Doc. 668; Richard Kerner, Doc. 654; and Joe Sanchez, Doc. 530, have motioned the court for an order requiring the government to admit or deny whether any evidence or testimony used by the government was unlawfully obtained. The government in response to the defendant's motion hereby denies that any evidence or testimony utilized by the government in the current prosecution was unlawfully or unconstitutionally obtained.

**XVI.** **Motion to Disclose Use of Pen Register and Title III Interception or Wiretap**

Defendant Gregorio Acosta, Doc. 591 Doc 592 motioned for the court to order the government to disclose the use of any pen register or trap and trace devices and or a Title III interception wiretap. The government advises and has already disclosed, via documents provided in the discovery materials, that a "pen register" was utilized in the instant case. In any event, pen register and trap and trace materials are available for viewing and will be kept with the physical evidence. Because the nature of the information provided by pen registers and trap and trace devices, the end product is not easily copied but can be viewed by making an appointment with the custodian of those documents. The government will have all the evidence centrally located and will provide counsel by mail with a procedure to schedule appointments to view the physical evidence,

pen register and trap and trace results.  Finally,  no Title III interception of  wire, oral or electronic communications was utilized as part of this investigation.

**XVII.  Motion for Disclosure of Destruction of Evidence**.

The  following  defendants,  Nicholas  Acosta,  Doc.  559;  Carlos  Avila,  Doc.  689;  Jorge Barragan, Doc. 665; John Garcia, Doc. 571; Juan Gonzalez, Doc. 631; Martin Martinez, Doc. 627; Gonzalo Mejia, Doc. 552; Joe Sanchez, Doc. 533, have motioned the court to order the government to disclosed a description of all evidence connected with the case which has been destroyed. The majority of the defendant's rely upon United States v. Bryant, 439 F.2d 642 (D.C.Cir.1971) where the court reasoned that Brady must apply to the loss of non-disclosed evidence of unknown content to prevent the government from circumventing the Brady guidelines by destroying evidence. 439 F.2d at  647-48.  The Seventh Circuit in United States v. Coe, 718 F.2d 830 (7th Cir.1983), rejected the defendant's argument, holding the Bryant analysis inapplicable on the ground that there was "at very least a hint of bad faith" on the officer's part in Bryant. 718 F.2d at 841. The court in Coe distinguished Bryant as follows:

"First, Bryant involved a tape recording of a drug transaction that the government later lost. The government chose to make the recording, had the benefit of listening to it, then deprived the defense of the same opportunity by intentionally taking no steps to preserve it.... In the instant case, neither party had the benefit of the fingerprint analysis. This case would be more closely analogous to Bryant if the government had analyzed the gun for fingerprints, reviewed the report, then intentionally failed to preserve the report for the defense."

Second, the Bryant Court prefaced its analysis by stating:  'It is important to recognize that this is not a case of good faith effort to preserve highly relevant evidence, frustrated only by

inadvertent loss. Rather, it is a case of intentional non-preservation by an investigative official.... At issue, then, are the legal consequences of intentional non-preservation by investigative officials of highly relevant evidence, colored by clear reluctance even to admit that the evidence ever existed at all.'   The [Bryant] court found it significant that loss of the evidence was accompanied by 'at very least a hint of bad faith,' holding that the circumstances of the loss are relevant to the question of proper sanctions...."   718 F.2d at 841 (quoting Bryant, 439 F.2d at 647) (citations omitted).

The Seventh Circuit in Coe concluded that because "there is no indication that the arresting officer who confiscated the gun was not acting in good faith or that he intended to destroy the potential fingerprint evidence," the sanction of mistrial was not warranted. Id.

In California v. Trombetta, 467 U.S. 479 (1984), the Supreme Court agreed that the loss or destruction of evidence does not implicate the Due Process Clause of the Fourteenth Amendment absent "official animus" or a "conscious effort to suppress exculpatory evidence." 467 U.S. at 488. In addition to the bad faith element, the Court held that the destroyed evidence must be "material" to the suspect's defense under this two-part test:   "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.   The mere possibility that evidence might have helped the defense or affected the outcome of a trial, does not establish "materiality" in the constitutional sense.  See United States v. Agurs, 427 U.S. 97 (1976) at 109-110.  To meet this standard of constitutional materiality,  evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta,  467 U.S. at 488-89.

In the present case the government would ask that the defendant's motion be denied.  The

51

government is not aware of any relevant evidence in the present case being destroyed, and is clearly aware that there was never an intentional effort by the prosecution to destroy relevant or exculpatory evidence.

## XVIII. Motion to Disclose Expert Testimony

Defendants, Jorge Barragan, Doc. 670; Richard Kerner, Doc. 645; Israel Moreno, Doc. 577; Joe Sanchez, Doc. 542; and Jesus Tello, Doc. 616, have motioned the court for Rule 16 disclosure of all expert testimony , including summaries, witness qualifications and a basis for the testimony. The government will provide this information within the next thirty days.    In the event that new scientific testing is required, the government agrees to provide  the required disclosure no later than 60 days prior to trial. For the aforementioned reasons, the government respectfully requests that the defendants' motion be granted.

## XIX.   Motion for Preservation of Agent Notes

The following defendants, Gregoria Acosta, Doc. 589; Nicholas Acosta, Doc. 563; Carlos Avila, Doc. 690; Jorge Barragan, Doc. 675; Desmond Cornelius, Doc. 618; Juan Gonzalez, Doc. 637; Richard Kerner, Doc. 658; Martin Martinez, Doc. 629; and Gonzalo Mejia, Doc. 553, have motioned the court to order the government to preserve agents notes.  The government has directed that federal and state law enforcement officers retain and preserve their handwritten notes pursuant to the defendant's request.   For the aforementioned reasons, the government respectfully requests that the defendant's motion be granted.

## XX.  Defendant's Motion to Suppress Evidence  Based upon the Lack of Probable Cause in the Supporting Affidavit for the Search Warrant

Defendant, Bobby Palacios, Doc. 620, requests the court suppress all the evidence seized from his residence located at 3129 W. Lincoln Ave. Milwaukee, Wisconsin based upon lack of probable cause. For the reasons set forth below, the United States respectfully requests that this motion be denied.

### A. Probable Cause for Search Warrant

The defendant seeks to suppress all the evidence seized from 3129 W. Lincoln Ave. Milwaukee, Wisconsin , on the basis that the affidavit submitted in application for the search warrant failed to establish probable cause because the supporting affidavit did not supply the issuing magistrate with sufficient probable cause and the magistrate simply acted as a "rubber stamp" in issuing the search warrant. The search warrant affidavit clearly outlines the basis for the search warrant.   The government believes that the affidavit presented in this case provided the court with probable cause.

When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. See United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967). Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. See Illinois v. Gates, 462 U.S. 213, 238, (1983); United States v. Jones, 208 F.3d 603, 608 (7th Cir. 2000).   The affidavit in the present case set forth sufficient facts.

It is important to recognize that probable cause is demonstrated by "facts sufficient to

53

induce a reasonably prudent person to believe that a search ... will uncover evidence of a crime." Id. at 1465 (quoting <u>United States v. McNeese</u>, 901 F.2d 585, 592 (7th Cir. 1990)) (internal quotations omitted). The Seventh Circuit has recognized that, in issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept, based on the nature of the evidence and the type of offense, and that in the case of drug dealers evidence is likely to be found where the dealers live." <u>United States v. Reddrick</u>, 90 F.3d 1276, 1281 (7th Cir. 1996) (emphasis added) (internal quotations and citations omitted). Here, the affidavit was clear and unequivocal in establishing that Palacios was a drug trafficker who twice sold cocaine to law enforcement. The affidavit also identified Palacios as a known member of the Latin Kings and in fact had been indicted in a federal RICO indictment. The affidavit also listed three other search warrants of Latin King gang members where Latin King literature and membership lists were recovered.

In the present case, Palacios further challenges the affidavit's reliability and the magistrate's findings as to the probability that evidence would be found there. In the present case a Federal Magistrate Judge weighed the evidence listed in the affidavit and found that the affidavit was sufficient to support probable cause for the search warrant. The Supreme Court has said that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 556, (1978). In this regard, several Seventh Circuit cases have recognized that, in issuing a search warrant, a magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," <u>United States v. Sleet</u>, 54 F.3d

54

303, 306 (7th Cir.1995), and that "in the case of drug dealers evidence is likely to be found where the dealers live," United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir.1991). The affidavit established that Palacios was a drug dealer, and a known indicted Latin King gang member. The affiant also provided background information that the affiant was familiar with the Latin Kings organization and familiar with search warrants executed on other Latin King gang members and that manifestos, membership lists and other Latin King paraphernalia is often found. This information, combined with the identify of the defendant's residence, was sufficient probable cause to support issuance of the warrant.

### B. Good Faith Exception

A facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. See United States v. Leon, 468 U.S. 897, 914, 922-23, (1984). Special Agent Porrini's decision to obtain a warrant is prima facie evidence that he was acting in good faith. See *Leon*, 468 U.S. at 921 n. 21, 104 S.C. 3405. To rebut this evidence, Palacios must show that the magistrate simply rubber-stamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied on it. See Leon, 468 U.S. at 923, 104 S.C. 3405. Palacios alleged that the issuing magistrate did abandon his neutral and detached role but offers little evidence in support other than the warrant lacked probable cause. In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court observed that "a magistrate's 'determination of probable cause should be paid great deference by the reviewing courts." Id. at 236. Even if a judge routinely authorizes the issuance of search warrants based on "boilerplate" affidavits, it still "might be difficult for a litigant to establish how the municipal judge abandoned her neutral and detached role in evaluating warrant applications*." United*

*States v. Brown*, 832 F.2d 991, 997 (7th Cir. 1988). See <u>Leon</u>, 468 U.S. at 916 n. 14. The defendant

has not met his burden.   Therefore, it was reasonable for Agent Porrini  to rely on a warrant issued

by a neutral and detached officer of the court. See <u>Leon</u>, 468 U.S. at 923, 104 S.C. 3405.

**XXI.    Motion to Dismiss Count Three Based upon Double Jeopardy**

Defendant Gregorio Acosta, Doc. 582,  has motioned the court for an order dismissing Count

Three based upon a double jeopardy claim.  The government believes that double jeopardy does not

bar the second drug conspiracy prosecution listed in Count Three based upon the factors utiltized by

the Seventh Circuit in <u>United States v. Castro</u>, 659 F. 2d 456 (7th Cir.1980).  However, based upon

other factors, the government will move to dismiss Count Three upon the government's own motion.

**XXII.   Motion to Disclose Government's Intention to Use Evidence Pursuant to Federal**
**          Rule of Criminal Procedure 12(b)(4)**

Several defendants, Carlos Avila, Doc. 685; Desmond Cornelius, Doc 622;  and Joe Sanchez,

Doc. 531, have filed motions to require the government to disclose government's intention to use

evidence pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure.

For the reasons that follow, the government respectfully requests that the motion be denied, as moot.

The defendant has filed the instant motion asking the government to notify the defendant of

its intent to use specified evidence at trial, pursuant to Fed. R. Crim. P. 12(b)(4) and 16, so that he

may move to suppress evidence under Rule 12(b)(3).

The government is following the open file policy in the instant case.  It has provided to the

defendant the material currently in its possession that is part of the open file, as defined by Crim. L.

R. 16.1(b) (E.D. Wis.).  The government will continue to disclose discoverable materials as they

become available.

**XXIII.   Motion to Dismiss based upon Speedy Trial Violation**

Defendant Ramon Alvarado, Doc 588, moves the court to dismiss the indictment pursuant to Rule 48, (b) and the Speedy Trial Act. The defendant's motion is unsupported in the law and should be denied. The defendant through counsel in this case attacks the government and alleges the that the delay in proceeding to trial was done by the government for a strategic advantage. This allegation is without merit. It is easy for this defendant to vilify the "the government," and allege improper motives but the facts of this case say otherwise. Mr. Alvarado is presently out of custody on bond. Mr. Alvarado was originally released on bond in the present case, but did spend several months in custody after the defendant repeatedly violated conditions of bond requiring multiple hearings and ultimately revocation of that bond. The government has been more than reasonable with Mr. Alvarado as well as many of the other defendants on the issue of bond. The fact remains that the delay in the case has been caused by the recent discovery of new criminal activity, not any alleged improper motive by the government. The government is just as anxious as the defendants to get this case to trial as the delay effects both sides equally. The court in setting a deadline wanted a definitive date to proceed on motions and like the government wanted to avoid having more than one superseding indictment on a 49 defendant case. The delay in this present case is justified and in the best interest of judicial resources.

There has been no Sixth Amendment violation of Ramon Alvarado' right to a speedy trial. Ramon Alvarado contends that his Sixth Amendment right to a speedy trial has been violated. There are four factors in determining whether the Sixth Amendment right to speedy trial has been violated: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant caused by the delay." United States v. Koller, 956 F.2d 1408, 1413 (7th Cir. 1992). It is "impossible to determine with precision when the right has

been denied " and none of the four factors [are regarded] . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Barker v. Wingo, 407 U.S. 514, 521, 533 (1972). See also Koller, 956 F.2d at 1414 (eight and a half months); United States v. Infelise, 934 F. 2d 103, 104 (7th Cir. 1991) (two year period of pretrial detention not per se unconstitutional).

First, the delay between the original indictment and the current status of the case is fourteen months, not an unreasonable time given the number of defendants and the complexity of the case. Getting all of the defendants arraigned took several months. The defendant's review of discovery took an additional several months The government originally supplied the discovery in computer disk form but due to the fact that many defendant's did not have computer access or the appropriate software the decision was made by the defendants to create paper copies of the discovery. Given these circumstances, the fourteen months delay here is not excessive and is reasonable in comparison to the periods of delay found to be constitutional by other courts. Barker, for example, involved a post-indictment delay of some five years, ten months of which was spent by the defendant in pretrial detention. Barker, 407 U.S. at 533-34.

Second, the reason for the delay was to allow defense counsel time to review discovery with their clients and prepare pretrial motions and to review the voluminous discovery materials. The government's discovery included audio and video tapes as well as voluminous police reports. The delay also allowed for many defendants to approach the government and begin cooperating and attempt to negotiate plea resolutions. The delay was in the interest of justice and benefited all parties.

The third factor, assertion of the speedy trial right, favors neither party as the defendant

58

never asserted a speedy trial claim, nor objected to the court's designation of the case as a "complex case." In addition, the defendant did not object to the order for the return of a superseding indictment by a set date.

The fourth factor is the prejudice to the defendant caused by the delay. The issue of prejudice usually concerns the following interests of the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." United States v. Jackson, 542 F.2d 403, 408 (7th Cir. 1976) (citing Barker, 407 U.S. at 532). The possibility that the defense will be impaired is the most serious of the three. Id. "With respect to the impairment to his defense, the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." Koller, 956 F.2d at 1414.

Here, Alvarado suffered no cognizable prejudice. Alvarado was previously released on bond. Alvarado can not allege prejudice other than pretrial incarceration, which was his own fault as he repeated violated the conditions of his bond. This inconvenience is not prejudice of a constitutional magnitude. The defendant has not pointed to anything in the delay that has caused actual impairment or identifiable prejudice to his defense. The failure to present evidence of actual prejudice weighs heavily in favor of the government. United States v. Holm, 550 F.2d 568, 569 (9th Cir. 1977).

It is important to remember that the speedy trial analysis is a balancing test. Barker, 407 U.S. at 533. In Jackson, the Seventh Circuit pointed out that "[a]lthough defendant's pretrial incarceration for approximately one year supports a presumption of prejudice, such prejudice 'unenhanced by tangible impairment of the defense function and unsupported by a better showing on

59

the other factors than was made here, does not alone make out a deprivation of the right to [a] speedy trial."' 542 F.2d at 408 (quoting United States v. DeTienne, 468 F.2d 151, 158 (7th Cir. 1972), cert. denied, 410 U.S. 911 (1973)).  Here, the Barker analysis weighs heavily in favor of the government; thus, the court would not abuse its discretion in allowing the case to proceed to trial.

The weight of authority notwithstanding, Alvarado' position might have some appeal if he could show he had been prejudiced by the fact that charges were added in the superseding indictment. He has argued prejudice but his argument does not address the kind of prejudice courts consider in deciding speedy trial  violations. The prejudice Alvarado  argues he suffers is only theoretical.   The kind of prejudice Alvarado should have addressed concerns the prejudice he suffered in preparing to defending himself at trial. "'Prejudice' is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense." United States v. Tedesco, 726 F.2d 1216, 1221 (7th Cir. 1984). "Defendant has provided us with no persuasive evidence demonstrating that he was somehow less able to present an adequate defense due to the passage of time." United States v. Salerno, 108 F.3d 730, 738 (7th Cir. 1997). Alvarado does not suggest he was prejudiced by additional charges in preparing for trial, nor could he. The superseding indictment has not been returned.  The defendant's motion to dismiss based upon pretrial delay should be denied.

## XXIV. Defendant's Motion to Dismiss Based Upon Double Jeopardy

Defendant, Ramon Alvarado, Doc. 596, 598, moves the court to dismiss various counts of the indictment based upon double jeopardy.  The claim appears to be based upon an allege "sham prosecution."  The defendant's motion has no merit and should be dismissed.  The defendant objects to the prosecution of the current indictment by Assistant District Attorney David Robles, who also

60

serves as a Special Assistant United States Attorney. The flaw in the defendants' double jeopardy argument is that they ignore the concept of dual sovereignty, which "has been a fixture of constitutional law for decades." United States v. Bafia, 949 F.2d 1465, 1478 (7th Cir. 1991). Under this doctrine, "two sovereigns (such as the state and the federal government, see Heath v. Alabama, 474 U.S. 82, 89 (1985) may prosecute an individual for the same conduct if it violates the laws of each." United States v. Brocksmith, 991 F.2d 1363, 1365 (7th Cir. 1993). See also United States v. Doyle, 121 F.3d 1078, 1091 (7th Cr. 1997). As the Supreme Court explained in United States v. Lanza, 260 U.S. 377 (1922): We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory . . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. Id. at 382. Hence, even assuming the defendant could clear the hurdle of establishing that his state custodial status constitutes a prior punishment for the same offense, the current federal prosecution of the defendants is clearly permitted under the dual sovereignty doctrine.

Finally, although not explicitly argued in the defendants brief, the defendant appears to assert a possible exception to the dual sovereignty doctrine which some courts have referred to as the "sham prosecution" exception. In Bartkus v. Illinois, 359 U.S. 121 (1959), the Supreme Court held that the defendant's federal prosecution for bank robbery following a state court acquittal based upon the same robbery violated neither the double-jeopardy clause nor the due process clause of the Fourteenth Amendment. In so holding, the Supreme Court noted that:

> The record establishes that the [state] prosecution was undertaken
> by state prosecuting officials within their discretionary

responsibility and on the basis of evidence that conduct contrary to the penial code of Illinois had occurred within their jurisdiction. It establishes also that federal officials acted in cooperation with state authorities, as is the conventional practice between the two sets of prosecutors throughout the country. It does not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.

359 U.S. at 123-24. Several cases in this circuit have questioned whether by that language <u>Bartkus</u> even intended to create an exception to the dual sovereignty doctrine. For example, in <u>United States v. Paiz</u>, 905 F.2d 1014, 1024 (7th Cir. 1990), the court noted that the "sham prosecution" exception to the dual sovereignty doctrine, "if it exists at all, is a narrow one, an extremely narrow one. Cases of this court dealing with claims of 'sham prosecution' have recognized this: We have uniformly rejected such claims. . . . other circuits have done likewise." 905 F.2d at 1024 (citations omitted). See also <u>Brocksmith</u>, 991 F.2d at 1366-67 (stating that "we have questioned whether <u>Bartkus</u> truly meant to create such an exception, and we have uniformly rejected such claims. . . . In any event, conversations and cooperative efforts between the state and federal investigators of the kind Brocksmith alleges are "undeniably legal" and are, in fact, "a welcome innovation in law enforcement techniques."); <u>United States v. Trammell</u>, 133 F.3d 1343, 1350 (10th Cir. 1998) (recognizing that "a defendant is not entitled to application of the exception simply because the same attorney represented both the State and the United States in the two prosecutions against the defendant"); <u>United States v. Bernhardt</u>, 831 F.2d 181, 183 (9th Cir. 1987) (ruling that a sham prosecution does not exist even when a state prosecutor later served as a specially appointed Assistant United States Attorney for the express purpose of prosecuting

Case 2:05-cr-00240-LA   Filed 12/22/06   Page 63 of 67   Document 716

defendant a second time and was compensated by the state to prosecute the defendant in federal court); United States v. Pena, 910 F. Supp. 535, 540 (D. Kan. 1995) ("every circuit to date that has considered this issue has held that the cross-designation of a state district attorney as a federal attorney to assist or even to conduct a federal prosecution does not by itself bring a case within the Bartkus exception.").

Commentators have likewise recognized that the "sham prosecution doctrine is more than narrow, it is illusory. No double-jeopardy claim premised upon the sham prosecution exception to the dual sovereign doctrine has survived appeal." Dawson, Michael, Popular Sovereignty, Double Jeopardy, and the Dual Sovereignty Doctrine, 102 Yale L.J. 281 (1992). In any event, the defendant bears a substantial burden of proving that a state prosecution is a vicarious federal prosecution. See United States v. Davis, 906 F.2d 829, 835 (2nd Cir. 1990) (burden on defendants to establish United States played role as "laboring oar" in conduct of state proceedings and federal prosecutors actively aided state prosecutors during local suppression hearing); In re Kunstler, 914 F.2d 505, 517 (4th Cir. 1990) (burden on defendant to establish that "state officials had little or no independent volition in their proceedings" to establish proof of sham prosecution); United States v. Koon, 34 F.3d 1416, 1439 (9th Cir. 1994) (burden on defendant to show that "subsequent prosecuting entity is 'tool' for first or proceeding is 'sham'"), aff'd on other grounds, 116 S. Ct. 2035 (1996); United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir 1991) (substantial burden on defendant to establish that "one sovereign is so dominated by the actions of the other than the former is not acting on its own volition"); United States v. Baptista-Rodriguez, 17 F.3d 1354, 1359 (11th Cir. 1994 ) (burden on defendant to make prima facie case that "one sovereign was so dominated, controlled, or manipulated by actions of others that it did not act of its own volition").

63

The facts of Paiz are analogous to those in this case. In Paiz, the defendant argued that the sham prosecution exception to the dual sovereignty doctrine should apply in that case because, among other things, the United States Drug Enforcement Agency was actively involved in a state investigation and arrest, and that an Indiana prosecutor was later designated as a Special Deputy United States Attorney for purposes of federal prosecution. Id. at 1024. Rejecting such a claim in Paiz, the court held that "these facts do not establish . . . that the two sovereigns were so intertwined that they were really one sovereign which prosecuted the appellant twice." They do not even hint at such a conclusion. At most they establish cooperative law enforcement efforts, efforts that are undeniably legal, and, indeed have been called "a welcome innovation." 905 F.2d at 1024.

In the case at hand, as in Bartkus and Paiz, the record of the state court prosecution of Ramon Alvarado establishes that the prosecution was undertaken by state prosecuting officials acting within their discretionary responsibility "and on the basis of evidence that conduct contrary to the penal code of [Wisconsin] had occurred within their jurisdiction." Bartkus, 359 U.S. at 123. The record establishes also that federal officials acted in cooperation with state authorities, "efforts that are undeniably legal, and indeed, have been called a welcome innovation." Paiz, 905 F.2d at 1024. Under these circumstances, courts have consistently upheld successive state and federal prosecutions based on the same conduct which violates the laws of both sovereigns. The record is devoid of evidence that the federal government so dominated the actions of the State of Wisconsin that the state did not act of its own volition. Accordingly, the defendants motion to dismiss based upon an alleged violation of the double jeopardy clause of the Fifth Amendment is without merit and should be denied. In addition the defendant request that the court order the government to disclose written evidence of the relationship between the United States Attorney's Office, Milwaukee HIDTA and

Milwaukee District Attorney's Office should be denied based upon the fact it is ambiguous and unsupported by any authority. The use of Special Assistant United States Attorney's is authorized by statute, Title 28, United States Code, section 543 and 544.

Very truly yours,

STEVEN M. BISKUPIC
United States Attorney

MARIO GONZALES
Assistant United States Attorney

DAVID ROBLES
Special Assistant United States Attorney

65



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Wisconsin*

| | |
|---|---|
| *517 East Wisconsin Avenue* | *414 / 297-1700* |
| *Milwaukee, WI 53202* | |

January 20, 2005

Clerk of Court
United States District Court
 Eastern District of Wisconsin
517 E. Wisconsin Ave.
Milwaukee, WI 53202

   RE: U.S. v. Timothy Vallejo, et al
      Case No: 05-CR-240

Dear Clerk:

  Enclosed please find the Government's Consolidated Response to the Defendant's Round One Pretrial Motions. We had computer difficulties and were unable to e-file said document. On Tuesday, December 26, 2006 we will immediately contact you to assist in any way possible in the e-filing of this document. We appreciate your patience and understanding.

       Very truly yours,

       STEVEN M. BISKUPIC
       United States Attorney

By:

       DAVE ROBLES
       Special Assistant United States Attorney

DR:am
Enclosure
cc: United States Magistrate Aaron E. Goodstein
   All Counsel