

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.

Case No. 05-CR-240

ALBERTO VALLEJO,

          Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Mario F. Gonzales, Assistant United States Attorney, and the defendant, Alberto Vallejo, individually and by attorney Edward J. Hunt, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in two counts of a thirty-eight-count indictment which alleges violations of Title 18, United States Code, Sections 1961 and 1962(d), Title 21, United States Code, Sections 841 and 846, and Title 26, United States Code, Sections 5841, 5861(d), and 5871.

3.     The defendant has read and fully understands the charges contained in the indictment and fully understands the nature and elements of the crimes with which he has been charged and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to Count One of the indictment set forth in full as follows:

See attached Exhibit A

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

The Milwaukee chapters of the Almighty Latin King Nation is an enterprise which satisfies the definition of enterprise found at 18 U.S.C. § 1961(4), as a "group of individuals associated in fact." In the United States, the national organization is composed of individual chapters located in various cities throughout the country, with the Midwest Region controlled by the Chicago/Indiana Latin King organization. Presently in Wisconsin, there are four subsets of the Latin Kings: the 19th Street Kings, the Sawyer Kings, the Wild Walker Kings and the 23rd St. Kings. Numerous cooperating witnesses state and the defendant himself admits that he was a member of the 19th Street Latin Kings, Milwaukee chapter of the Latin King street gang. The defendant further admits that he conspired with other Latin King gang members to commit at least two qualifying criminal acts in furtherance of the criminal enterprise. The Latin Kings are a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, extortion and distribution of controlled substances, and which operated principally on the south side of Milwaukee. The following criminal acts were acts in furtherance of that conspiracy.

2

On July 27, 2002, Ismael Sostre, a known Insane Unknown gang member, was in the area of 1509 S. 6th St. with friends. Sostre stated he heard yelling from across the street, after which he heard approximately five gunshots. Sostre said he was struck by a bullet in his left leg. Citizens followed Sostre's assailant to a residence at 1516A S. 6th St, Milwaukee, Wisconsin and directed police to the above location. Located in the residence was ALBERTO VALLEJO (found hiding in the basement), and four known Latin Kings. Also found in the residence were two firearms, a .22 caliber and a .25 caliber pistol. Located in the area where the gunfire originated were .22 and .25 caliber casings.

Ismael Sostre, Hector Rodriguez and Freddie Rosas positively identified ALBERTO VALLEJO as the shooter. Two cooperating Latin Kings who were present at 1516A S. 6th St. after the shooting, said ALBERTO VALLEJO returned to the house and told everyone that he shot an "L.F." VALLEJO was referring to the street name for the La Familia gang, rivals to the Latin Kings.

On January 18, 2003, A. B., witnessed the homicide of Christain Ferrer at 2376 South 19th Street, Milwaukee, Wisconsin. A.B. had just returned from a grocery store and observed Christian Ferrer walking southbound on 19th Street but did not pay too much attention at that time as he was getting his groceries. A.B. said he also observed a small black two-door car parked at the curb in front of the apartment building. A.B. observed at least two males in the vehicle.

A.B. said that while the victim was walking, it appeared to A.B. that someone in the vehicle had called Ferrer over to the car. A.B. said he could not hear any words but believed there were some words exchanged between the front passenger and the victim. A.B. said that while he was looking into his trunk he heard the sound of gunshots. A.B. turned and saw Ferrer moving away from the above described small black two-door vehicle; A.B. said that the passenger of the

3

small black car then got out of that car and was shooting at the victim. A.B. said that the assailant walked and fired towards Ferrer as both Ferrer and the assailant moved away from the small black vehicle. The assailant then returned to and entered the black car which then fled northbound on South 19th Street out of A.B. line of sight. The offense took place at approximately 2:50 pm on Saturday, January 18, 2003.

The investigation at the scene by Detective Randolph Olson resulted in the recovery of ten (10) 9mm casings and six (6) bullets. At the time of Ferrer's death, he was wearing a white Nike hat, hooded gray sweatshirt and a black down jacket. A cooperating defendant, W.W. stated that on January 18, 2003, that he was at the residence of MARIO BANDA with ALBERTO VALLEJO, EMMANUEL MARTINEZ, and MARIO BANDA. W.W. stated that JOSE RAMIREZ, a.k.a. "Two Bit" arrived at the residence driving a stolen vehicle. W.W. described the vehicle as a small black stick shift vehicle, most likely a foreign car. W.W. stated that ALBERTO VALLEJO, JOSE RAMIREZ and EMMANUEL MARTINEZ left in that vehicle looking for enemies of the Latin Kings. W.W. said that he observed ALBERTO VALLEJO had a 9mm Ruger handgun with him. According to W.W. the defendants drove around the area of South 19th and Lincoln to the area of South 19th and Hayes. At that location, the group saw an individual (subsequently identified as Christian Ferrer) walking down the street wearing a black coat and a skull cap that had a Nike symbol. W. W. stated that the group noticed that the Nike symbol was turned to the right side, which indicated that Ferrer was a member of the "Folks" Nation. The vehicle then pulled up to Ferrer, and VALLEJO then turned his hat to the right and asked Ferrer "Are you Folks?" Ferrer said he was. VALLEJO then again asked Ferrer "Are you real Folks?" after which Ferrer responded "Yes." VALLEJO exited the vehicle and began firing his 9mm gun at Ferrer. VALLEJO fired the weapon approximately six (6) to seven (7)

4

times. After VALLEJO shot Ferrer, the group returned to the residence of MARIO BANDA. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count One, life imprisonment and $250,000; The count also carries a mandatory special assessment of $100, and a maximum of five years of supervised release. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Racketeering, as charged in Count One, the government must prove the following propositions:

First, that the Milwaukee Chapter of the Latin Kings was an enterprise;

Second, that the defendant was associated with Milwaukee Chapter of the Latin Kings, the enterprise;

Third, that the defendant knowingly conducted or participated in the conduct of the affairs of Milwaukee Chapter of the Latin Kings through a pattern of racketeering activity as described in Count One;

5

Fourth, that the activities of Milwaukee Chapter of the Latin Kings affected interstate commerce; and

Fifth, that the commission of at least one of the racketeering acts described in Count One occurred at least five years prior to the return of the indictment.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in Exhibit A. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

6

## **Sentencing Guidelines Calculations**

14.     The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## **Relevant Conduct**

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

## **Base Offense Level**

16.     The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 43 under Sentencing Guidelines Manual §§2E1.1 (a)(2) and 2A1.1(a). The parties further understand that the defendant may recommend a lesser offense level.

7

## Role in the Offense

17.     The parties acknowledge and understand that the government will recommend to the sentencing court that, pursuant to Sentencing Guidelines Manual §§ 3B1.1 and 3B1.2, no increase or decrease be given for an aggravating or a mitigating role in the offense.

## Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Career Offender

19.     The parties acknowledge, understand, and agree that the defendant may qualify as a career offender under the sentencing guidelines and further understand, acknowledge, and agree that the defendant may not move to withdraw the guilty plea solely as a result of a determination that he is a career offender.

8

## Sentencing Recommendations

20.     Both parties reserve the right to apprize the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21.     Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22.     The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

23.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 and 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

9

24.     The parties acknowledge, understand, and agree that thc defendant may not move to withdraw the guilty plea solely as a result of the sentence imposcd by the court.

## FINANCIAL MATTERS

25.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

26.     The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will bc provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

### Fine

27.     The parties agree to recommcnd to the sentencing court that a nominal fine consistent with the defendant's ability to pay be imposed against thc defendant

### Special Assessment

28.     The defendant agrees to pay thc spccial assessment in the amount of $100 prior to or at the time of sentencing.

10

## Forfeiture

29.     The defendant agrees that all properties listed in the indictment, and/or bill of particulars constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties agree that the forfeiture of the defendant's properties as described in the indictment, information and/or bill of particulars will be determined by the court prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

30.     In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

> a.     If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

> b.     If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

11

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth

Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement or the Stipulation of Facts Relative to Sentencing, included in this plea agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and

13

further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## DEFENDANTS COOPERATION

39. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant has provided substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this

14

agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

41.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

15

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4/18/08

ALBERTO VALLEJO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 4/18/08

Edward John Hunt
EDWARD J. HUNT
Attorney for Defendant

For the United States of America:

Date: 4/18/08

STEVEN M. BISKUPIC
United States Attorney

Date: 4-18-08

MARIO F. GONZALES
Assistant United States Attorney

16

ATTACHMENT A

## RACKETEERING COUNTS
## COUNT ONE

**THE GRAND JURY CHARGES:**
**The Enterprise**

1.     From on or about January 1, 1998 and continuing until at least September 27, 2005,

in the State and Eastern District of Wisconsin, and elsewhere,

> **RAMON ALVARADO, a/k/a "Lil Wolfy,"**
> **CARLOS AVILA,**
> **CARLOS BALENTINE, a/k/a "Fro,"**
> **ARMANDO BARRAGAN, a/k/a "Mondie,"**
> **MICHAEL CARROLL,**
> **FLORENTINO CASTILLO, a/k/a "Boy,"**
> **ADRIAN CERDA, "A-Town",**
> **HUGO DELPORTILLO, a/k/a "Hugo,"**
> **WILLIAM FUHR, a/k/a "Squirt Guns,"**
> **RAMON GONZALEZ, a/k/a "Platinum",**
> **KENNETH HILL, a/k/a "Boobie,"**
> **BRENT MANVILLA, a/k/a "Gucci,"**
> **EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"**
> **GONZALO MEJIA, a/k/a "Wetto,"**
> **JULIO MUNIZ, a/k/a "Fat Fat,"**
> **BOBBY PALACIOS,**
> **JOSE A. RAMIREZ, a/k/a "2 Bit,"**
> **MIGUEL RUIZ, a/k/a "KiKi,"**
> **SADAM SALEM, a/k/a "Walla,"**
> **JOSE SOTO, a/k/a "Juno",**
> **JESUS TELLO, a/k/a "Spider,"**
> **ALBERTO VALLEJO, a/k/a "Berto,"**
> **TIMOTHY VALLEJO, a/k/a "Tim,"**
> **WARREN WELLS, a/k/a "Lauren/Rince," and**
> **THOMAS WYLIE, a/k/a "Tommy Guns,"**

the defendants, and others, known and unknown, being members and associates of a criminal

organization known as the Almighty Latin King Nation, Milwaukee Chapter, hereinafter referred to

as the "Latin Kings," which is an enterprise engaged in, and the activities of which affected interstate

and foreign commerce, did knowingly, willfully and unlawfully conduct and participate, directly and

indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as those terms are defined in Title 18, United States Code, Sections 1961(1) and (5), to wit: through the commission of Racketeering Acts 1 through 60, as set forth below and incorporated herein, in violation of Title 18, United States Code, Section 1962(c).

2.    Criminal activity committed by members of the Latin King enterprise includes murder, attempted murder, drug trafficking, firearm offenses, robbery, kidnapping, assault and battery, home invasion, arson, drive-by shootings and intimidation of witnesses.

3.    The Latin Kings, as defined above, including its leadership, its membership and its associates, constitute an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. At all times relevant to this Indictment, the enterprise operated in the Eastern District of Wisconsin, among other locations. This enterprise was engaged, and its activities affected, interstate and foreign commerce.

## I.    INTRODUCTION.

4.    At all times material to this Indictment:

a.    The Almighty Latin King Nation is a national organization with chapters in several states, including Wisconsin, Illinois, Connecticut, Florida and New York. The Almighty Latin King Nation established themselves in the Milwaukee area in the mid-1970's and formed a chapter for the Milwaukee area. The Milwaukee chapter of the Almighty Latin King Nation is overseen by the Chicago/Indiana regional leadership of the Latin Kings. The supervision of the activities of the Milwaukee Latin Kings has changed over time and is presently overseen by the Northwest region Latin Kings centered in the State of Illinois.

b.    In Milwaukee, rivalries developed between the Latin Kings and other street gangs, such as the Spanish Cobras. Fights and shootings between the Latin Kings and other groups have become commonplace. Since their appearance

in Milwaukee, the Latin Kings have grown substantially, and there are Latin King members in numerous state correctional facilities, as well as throughout the metropolitan Milwaukee region. The Latin Kings also conduct business with Almighty Latin King Nation chapters in other states.

c.   Milwaukee area street gangs are generally divided into two opposing factions, "People" and "Folks." The Latin Kings are members of the People faction, whereas their rivals are generally aligned with the Folks. The Latin Kings are constantly at war with Folks-aligned gangs, as well as other rival gangs.

d.   The Latin King enterprise has an organized structure, which is outlined in a written "manifesto." The manifesto includes rules of conduct for the members of the Latin Kings, and outlines the general hierarchy within the Latin Kings enterprise. The manifesto also establishes the five-point crown as the unifying symbol of all Latin Kings. Members indicate their affiliation with the Latin Kings through the use of hand gestures, as well as tattoos. The common colors worn by members to show affiliation with the Latin Kings are black and gold.

e.   The Latin King enterprise has at times included a "crown council" which is comprised of several members who oversee the activities of the Latin King leadership and membership. The members of the crown council typically avoid direct participation in the illegal activity of the Latin King criminal enterprise. The crown council often provides advice to the various chapters of the Latin Kings, as well as a forum for the resolution of disputes. The territory of the Latin Kings consists primarily of the geographical area from South 35th Street to South First, and between National Avenue and Oklahoma Avenue. The Latin Kings are comprised of several subchapters or sets. Each Latin King subchapter covers a general area where members of that particular group tend to congregate. This area is protected from rival gang members through acts of violence and intimidation by the Latin Kings. The area may be marked with graffiti painted or written on buildings, road signs and property. The Latin Kings are generally divided into several subchapters, based upon the area in which they live or spend time. These include the "Wild Walker Kings," the "Twenty-Third Street Kings," the "Sawyer Kings," and the "19th Street Kings." All these subchapters hold, at different times, joint meetings called "Nation meetings" and have been involved in drug distribution on the south side of Milwaukee.

g.   The Latin Kings also have members who identify themselves as "Junior Kings," or "shorties," who are generally younger members. The Junior Latin Kings are often called upon to carry out specific acts of violence. Junior Latin Kings are also responsible for protecting their territory from rival gangs and for warning of any police presence.

h.    On the street level, the structure of local chapters is as follows:

    1.    The Inca is the highest ranking officer in every subchapter of the Latin Kings. The Inca is normally elected by majority vote of his chapter's membership. The Inca is responsible for the actions, security, treasury and general welfare of the membership in his subchapter. Any action taken by the Inca may be enforced through the "Casinca" or "Cacique."

    2.    The "Casinca" or "Cacique" is second in command of his subchapter. He, like the Inca, is ordinarily elected. The "Casinca" or "Cacique" generally works hand-in-hand with the Inca and often assumes the responsibilities of the Inca in case of the Inca=s absence.

    3.    Many chapters also have, at times, an Enforcer who is responsible for the security of members in his subchapter.

i.    The Latin King enterprise and its members are involved in numerous crimes, including the sale and distribution of drugs, armed robbery, murder, assaults and drive-by shootings. A portion of money made from drug trafficking and robberies is expected to be given to the Latin King Nation which, in turn, enables the Latin Kings to pay chapter dues, to obtain firearms and provide support to incarcerated Latin Kings and their families, as well as to support the Latin Kings in other ways.

j.    The Latin Kings use violence as a means of retribution for acts done by rival gang members, to intimidate witnesses, and as a means for individuals to maintain or advance their position within the gang.

k.    Members of the Latin Kings who disobey orders or rules or who are deemed to have acted contrary to the best interest of the Latin Kings may be punished. This punishment, which is referred to as a "violation," may consist of a beating, a robbery or death.

## II.    PURPOSES OF THE ENTERPRISE.

    5.    It was an object and purpose of the enterprise to protect and defend territory considered to be within the control of the Latin Kings by acts of violence committed against members of rival street gangs, as well as by other means.

    6.    It was an object and purpose of the enterprise to possess and traffic in controlled substances for the benefit of the Latin Kings and their members.

7. It was an object and purpose of the enterprise to commit acts of robbery, home invasion and theft for the benefit of the Latin Kings and their members.

8. It was an object and purpose of the enterprise to obtain firearms for use in violent crimes and other Latin King endeavors.

9. It was an object and purpose of the enterprise to provide economic and social support to the Latin King "Nation."

10. It was an object and purpose of the enterprise to preserve and protect the power of the enterprise, its members and associates through the use of intimidation, threats of violence and acts of violence, including murder.

11. It was an object and purpose of the enterprise to intimidate witnesses in an attempt to prevent them from cooperating with law enforcement authorities.

## III.   MEANS AND METHODS.

12. Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

    a.    Latin Kings murder and attempt to murder members of rival gangs including, but not limited to, the Imperial Gangsters, La Familia, Maniac Latin Disciples, Mexican Posse, and Spanish Cobras. Latin Kings committed murders in response to acts deemed disrespectful of the Latin Kings. The Latin Kings also murdered individuals believed to have provided information to law enforcement. The Latin Kings also used violence to protect their territory from rival gang members.

    b.    Latin Kings commit arson against the person and properties of rival gangs and their members including, but not limited to, the Imperial Gangsters, La Familia, Maniac Latin Disciples, Mexican Posse and Spanish Cobras, as well as potential witnesses against the Latin Kings.

    c.    Latin Kings commit robbery against rival gang members, those the Latin Kings believed were drug dealers and others. Robberies were also committed for the benefit of the enterprise and its members.

d.  Latin Kings traffic in controlled substances, including powder and crack cocaine, LSD and marijuana. The primary source of Latin King income is through drug dealing, robbery and gun sales. The proceeds of drug distribution enable the Latin Kings to make money, obtain firearms and obtain power outside the organization. Proceeds from drug robberies and drug trafficking support legitimate businesses that the Latin Kings control. Latin Kings also commit acts of intimidation designed to extort money from individuals who wish to sell drugs in Latin King territory.

e.  Latin Kings receive training from more experienced Latin Kings on the various means of avoiding apprehension for their crimes. This training includes methods of committing the crimes, destroying evidence and intimidating potential witnesses.

f.  Latin Kings rely heavily on cellular telephones and pagers. They use telephones subscribed to by their girlfriends or relatives. When the Latin Kings communicate by telephone or pager, they frequently use codes when discussing drug transactions.

g.  Latin King members and their associates meet on a regular basis to discuss and further the affairs of the enterprise.

h.  Latin King members possess, transport and use firearms and other deadly weapons and use violence and threats of violence to promote and conduct the affairs of the enterprise.

i.  Latin Kings use guns purchased or obtained for use by the enterprise, which are called "Nation" guns. Nation guns and other weapons are used to promote and conduct the affairs of the Latin King enterprise. Nation guns are often stored at houses used as safe houses located outside Latin King territory. Latin King members provide weapons to each other for use in violent crimes.

j.  Latin King members utilize the United States mail to promote and conduct the affairs of the enterprise.

k.  Latin King members and their associates travel in and use facilities in interstate commerce in aid of their racketeering activities.

l.  Latin King members and their associates compel and collect the payments of dues from members of the Latin Kings.

m.  Latin Kings take steps to learn the identity of potential witnesses to crimes committed by Latin King members, and thereafter engage in acts of

intimation against those witnesses.

n.      Latin Kings enforce discipline among members and associates through acts or threats of violence for disobedience of rules or orders.

## IV.    THE RACKETEERING VIOLATIONS

13.     From January 1, 1998, and continuing to at least September 27, 2005, in the State and Eastern District of Wisconsin and elsewhere, the defendants named in paragraph 1, and others known and unknown, being members of and associates of the Latin Kings, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity. The pattern of racketeering activity, as defined in Title 18, United States Code §§ 1961(1) and 1961(5) consisted of the following acts:

### Racketeering Act # 1

### Drug Trafficking

On or about May 8, 1998, in the State and Eastern District of Wisconsin,

### FLORENTINO CASTILLO, a/k/a "Boy,"

the defendant, knowingly and intentionally possessed with the intent to distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance,

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D), and Title 18, United States Code, Section 2.

### Racketeering Act # 2

### Drug Trafficking

1.  On or about May 29, 1999, in the State and Eastern District of Wisconsin,

### CARLOS BALENTINE, a/k/a "Fro,"

the defendant, did knowingly and intentionally possess with intent to distribute a controlled substance.

2.    The offense involved at least 5 grams of a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2.

## Racketeering Act # 3

## Drug Trafficking

On or about May 29, 1999, in the State and Eastern District of Wisconsin,

### CARLOS BALENTINE, a/k/a "Fro,"

the defendant, did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D), and Title 18, United States Code, Section 2.

## Racketeering Act # 4

## Drug Trafficking

On or about August 5, 1999, in the State and Eastern District of Wisconsin,

### FLORENTINO CASTILLO, a/k/a, "Boy,"

the defendant, did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(C), and Title

18, United States Code, Section 2.

## Racketeering Act # 5

### Drug Trafficking

On or about February 7, 2000, in the State and Eastern District of Wisconsin,

### BOBBY PALACIOS,

the defendant, did knowingly and intentionally distribute a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title

18, United States Code, Section 2.

## Racketeering Act # 6

### Drug Trafficking at 2016 S. 15th Street, Milwaukee, WI

1.      On or about September 11, 2001, in the State and Eastern District of Wisconsin,

### FLORENTINO CASTILLO, a/k/a "Boy," and
### JUAN GONZALEZ, a/k/a "Jay,"

the defendants, did knowingly and intentionally possess with intent to distribute a controlled

substance.

2.      The offense involved at least 5 grams of a mixture and substance containing a detectable

amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title

18, United States Code, Section 2.

## Racketeering Act # 7

### Attempted Murder of Spanish Cobra Gang Members at 1652 S. 21st Street, Milwaukee, WI

On or about October 7, 2001, in the State and Eastern District of Wisconsin,

**WILLIAM FUHR, a/k/a "Squirt Guns," and**
**THOMAS WYLIE, a/k/a "Tommy Guns,"**

the defendants, did commit an act involving murder, that is, the defendants did knowingly and

intentionally attempt to kill Vincent Murillo and Evangelina Murillo, human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes

## Racketeering Act # 8

## Drug Trafficking

1.    On or about November 5, 2001, in the State and Eastern District of Wisconsin,
**RAMON ALVARADO, a/k/a "Lil Wolfy,"**
**FLORENTINO CASTILLO, a/k/a "Boy," and**
**JUAN GONZALEZ, a/k/a "Jay,"**

the defendants, did knowingly and intentionally possess with intent to distribute a controlled

substance. ,

2.    The offense involved at least 5 grams of a mixture and substance containing a detectable

amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title

18, United States Code Section 2.

## Racketeering Act #9

### Drug Trafficking

On or about November 8, 2001, in the State and Eastern District of Wisconsin,

### WILLIAM FUHR , a/k/a "Squirt Guns,"

the defendant, did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount marijuana , a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D), and Title 18, United States Code, Section 2.

### Racketeering Act # 10

### Conspiracy to Murder of Rival Gang Members

Between on or about January 30, 2002, and September 15, 2005, in the State and Eastern District of Wisconsin,

CARLOS BALENTINE, a/k/a "Fro,"
ARMANDO BARRAGAN, a/k/a " Mondie,"
MICHAEL CARROLL,
DESMOND CORNELIUS,
HUGO DELPORTILLO, a/k/a "Hugo,"
CARLOS LOPEZ, a/k/a "Gordo,"
BRENT MANVILLA, a/k/a "Gucci,"
EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"
GONZALO MEJIA, a/k/a"Wetto,"
JOSE RAMIREZ, a/ka/ "2-Bit,"
MIGUEL RUIZ, a/k/a "Kiki,"
SADAM SALEM, a/k/a "Walla,"
JESUS TELLO,
ALBERTO VALLEJO, a/k/a "Berto,"
TIMOTHY VALLEJO, a/k/a "Tim,"
THOMAS WYLIE, a/k/a "Tommy Guns," and
WARREN WELLS, a/k/a "Lauren/Rince,"

the defendants, and others known and unknown, knowingly conspired to commit an act involving murder, that is, the defendants did knowingly and intentionally conspire to kill rival gang members, human beings, and in furtherance thereof, one or more of said co-conspirators did discharge a firearm in the direction of rival gang members with the intent to kill.

All in violation of Sections 940.01 and 939.31 of the Wisconsin Statutes.

## Racketeering Act #11

## Drug Trafficking

On or about January 30, 2002, in the State and Eastern District of Wisconsin,

**RAMON GONZALEZ, a/k/a, "Platinum," and
WARREN WELLS, a/k/a "Lauren/Rince,"**

the defendants, did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## Racketeering Act # 12

## Attempt Murder of Mexican Posse Gang Members

On or about January 30, 2002, in the State and Eastern District of Wisconsin,

**CARLOS BALENTINE, a/k/a "Fro,"
TIMOTHY VALLEJO, a/k/a "Tim,"
ALBERTO VALLEJO, a/k/a/ "Berto," and
WARREN WELLS, a/k/a "Lauren/Rince,"**

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill rival Mexican Posse gang members,

human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 13

## Murder of Jeffrey Becker

On and about February 10, 2002, in the State and Eastern District of Wisconsin,

## RAMON GONZALEZ, "Platinum,"

the defendant, did commit an act involving murder, that is, with the intent to kill, did cause the

death of Jeffrey Becker, a human being.

All in violation of Sections 940.01, 940.02 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 14

## Attempted Murder of Jose Espinoza

On or about June 4, 2002, in the State and Eastern District of Wisconsin,

## JESUS TELLO, a/k/a "Spider,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Jose Espinoza, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 15

## Attempted Murder of La Familia Gang Member at 1435 W. Walker, Milwaukee, WI

On or about June 13, 2002, in the State and Eastern District of Wisconsin,

## MIGUEL RUIZ, a/k/a, "Kiki,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Kevin Easton, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 16

### Drug Trafficking

1.      On or about June 20, 2002, in the State and Eastern District of Wisconsin,

**RAMON ALVARADO, a/k/a, "Lil Wolfy,"**
**FLORENTINO CASTILLO, a/k/a, "Boy," and**
**HUGO DELPORTILLO, a/k/a, "Hugo,"**

the defendants, did knowingly and intentionally possess with intent to distribute a controlled substance.

2.      The offense involved at least 5 grams of a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2.

### Racketeering Act # 17

### Attempted Murder of La Familia Gang Member 1003 S. 24th Street, Milwaukee, WI

On or about June 23, 2002, in the State and Eastern District of Wisconsin,

### ARMANDO BARRAGAN, a/k/a, "Mondie,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendants did knowingly and intentionally attempt to kill Ali Fahad, Laith Fahad, and Ricardo Fuentez, human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 18

### Attempted Murder of Yolanda Ortiz

On or about June 25, 2002, in the State and Eastern District of Wisconsin,

### HUGO DELPORTILLO, a/k/a, "Hugo,"
### ALBERTO VALLEJO a/k/a "Berto,"

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Yolanda Ortiz, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 19

### Attempted Murder of Mexican Posse Gang Members

The defendants below committed the following acts, any one of which alone constitutes the

commission of Racketeering Act #19:

### a.    Attempted Murder of Mexican Posse Gang Member

On or about July 12, 2002, in the State and Eastern District of Wisconsin,

### SADAM SALEM, a/k/a "Walla," and
### JESUS TELLO, a/k/a "Spider,"

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill Rene Carmona, Daniel Carmona, and

Pedro Gaona, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### b.    Attempted Murder of Mexican Posse Gang Member

On or about July 12, 2002, in the State and Eastern District of Wisconsin,

## SADAM SALEM, a/k/a "Walla,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Rene Carmona, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 20

## Attempted Arson of the Open Pantry at 1804 W. Lincoln Ave. , Milwaukee, WI

On or about July 16, 2002, in the State and Eastern District of Wisconsin,

### SADAM SALEM, a/k/a "Walla," and
### JOSE SOTO, a/k/a "Juno,"

the defendants, and others known and unknown, did attempt to commit an act involving arson,

that is, the defendants by means of fire did attempt to intentionally damage the building of

another, the Open Pantry located at 1804 W. Lincoln Ave., Milwaukee, without the owner's

consent.

All in violation of Sections 943.02, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 21

## Attempted Murder of Insane Unknown Gang Member at 1509 S. 6th Street, Milwaukee, WI

On or about July 27, 2002, in the State and Eastern District of Wisconsin,

### ALBERTO VALLEJO, a/k/a "Berto,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Ismael Sostre, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 22

### Attempted Murder of Rival Gang Members in the area of 2700S. 10th Street, Milwaukee, WI.

On or about August 6, 2002, in the State and Eastern District of Wisconsin,

### WARREN WELLS, a/k/a "Lauren/Rince,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant knowingly and intentionally attempted to kill Mathew Mason, Jesse Matias and Daniel

Franco, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 23

### Attempted Murder of Geremias Hernandez at 1804 W. Lincoln Ave., Milwaukee, WI

On or about August 30, 2002, in the State and Eastern District of Wisconsin,

### TIMOTHY VALLEJO, a/k/a "Tim,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Geremias Hernandez, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 24

### Attempted Murder of Rival Gang Members at 1900 S. 26th Street, Milwaukee, WI

On or about October 28, 2002, in the State and Eastern District of Wisconsin,

### DESMOND CORNELIUS,
### BRENT MANVILLA, a/k/a "Gucci," and
### EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants knowingly and intentionally attempted to kill Kenneth Kullas, Michael Graika, Charles Haggerty, and Cary Wiefelspuetz, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 25

## Murder of Jorge Claudio at 1336 W. Greenfield Ave., Milwaukee, WI

On or about November 10, 2002, in the State and Eastern District of Wisconsin,

### ALBERTO VALLEJO, a/k/a "Berto,"

the defendant, and others known and unknown, did commit an act involving murder, that is, with the intent to kill, did cause the death of Jorge Claudio, a human being.

All in violation of Sections 940.01, 940.02 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 26

## Attempted Murder of Daniel Fonseca at 1132 West Maple Street, Milwaukee, WI

On or about November 28, 2002, in the State and Eastern District of Wisconsin,

### EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill Daniel Fonseca, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 27

## Robbery of Elizabeth Saldana at 1575 W. Walker, Milwaukee, WI

On or about January 4, 2003, in the State and Eastern District of Wisconsin,

### JOSE A. RAMIREZ, a/k/a, "2-Bit,"

the defendant, and others known and unknown, did commit an act involving the robbery that is, did rob Elizabeth Saldana.

All in violation of Sections 943.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 28

### Murder of Christian Ferrer at 2376 S. 19th Street, Milwaukee, WI

On or about January 18, 2003, in the State and Eastern District of Wisconsin,

### JOSE A. RAMIREZ, a/k/a "2 Bit,",and
### ALBERTO VALLEJO, a/k/a "Berto,"

the defendants, and others known and unknown, did commit an act involving murder, that is, with the intent to kill, did cause the death of Christian Ferrer, a human being.

All in violation of Sections 940.01, 940.02 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 29

### Attempted Murder of Kirdell Wright in the area of 1818 State Street, Milwaukee, WI

On or about March 28, 2003, in the State and Eastern District of Wisconsin,

### TIMOTHY VALLEJO, a/k/a "Tim,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill Kirdell Wright, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 30

### Attempted Murder of Raymond Baker at 1820 W. State Street, Milwaukee, WI

On or about March 29, 2003, in the State and Eastern District of Wisconsin,

**EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"**

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Raymond Baker, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act #31

### Drug Trafficking

On or about April 1, 2003, in the State and Eastern District of Wisconsin,

### KENNETH HILL, a/k/a "Boobie,"

the defendant, did knowingly and intentionally distribute a mixture and substance containing a

detectable amount of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(D), and

Title 18, United States Code, Section 2.

### Racketeering Act # 32

### Murder of Kevin Hirschfield at 4944 S. Packard Ave. ,Cudahy, WI

On or about April 19, 2003, in the State and Eastern District of Wisconsin,

**ARMONDO BARRAGAN, a/k/a "Mondie,"**
**EMMANUEL MARTINEZ, a/k/a "Tu-Tu," and**
**TIMOTHY VALLEJO, a/k/a "Tim,"**

the defendants, and others known and unknown, did commit an act involving murder, that is,

with the intent to kill, did cause the death of Kevin Hirschfield, a human being.

All in violation of Sections 940.01-940.02 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 33

### Attempted Murder of Mexican Posse Members at 1016 W. Pierce Street, Milwaukee, WI

On or about June 15, 2003, in the State and Eastern District of Wisconsin,

### GONZALO MEJIA, a/k/a "Wetto,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Mexican Posse gang members, human

beings and during such crime did shoot and strike an eight year old boy.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 34

### Attempted Murder of Robert Acevedo at1100 block W. Arthur St., Milwaukee, WI

On or about June 25, 2003, in the State and Eastern District of Wisconsin,

### EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill Robert Acevedo, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 35

### Attempted Murder of Jorge Perez-Santos, Jose Gutierrez, DeePak Anand, and Jessica Gronowski, at 1908 W. Burnham St., Milwaukee, WI

On or about June 25, 2003, in the State and Eastern District of Wisconsin,

### MICHAEL CARROLL, and CARLOS LOPEZ, a/k/a "Gordy/Gordo,"

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill Jorge Perez-Santos, Jose Gutierrez,

DeePak Anand, and Jessica Gronowski, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 36

### Attempted Murder of Christopher Gonzalez at 1539 S. 15th Street, Milwaukee, WI

On or about July 4, 2003, in the State and Eastern District of Wisconsin,

## MIGUEL RUIZ, a/k/a "KiKi," and
## THOMAS WYLIE, a/k/a "Tommy Guns,"

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill Christopher Gonzalez, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 37

### Attempted Murder of Rival Gang Member at 3424 W. Hayes, Milwaukee, WI

On or about July 9, 2003, in the State and Eastern District of Wisconsin,

## CARLOS AVILA,

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill rival gang member "Dominic," a

human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 38

### Intimidation of a Witness, Christopher Gonzalez, on July 12, 2003

On or about July 12, 2003, in the State and Eastern District of Wisconsin,

**MIGUEL RUIZ, a/k/a "KiKi,"**

the defendant, and others known and unknown, did commit an act involving obstruction of

justice, that is, the defendant did attempt to intimidate a witness, Christopher Gonzalez, by using

intimidation and physical force and threats of physical force toward Christopher Gonzalez, with

the intent to influence, delay and prevent Gonzalez' testimony in an official proceeding.

All in violation of Title 18, United States Code, Sections 1512(2)(a), and 2.

## Racketeering Act # 39

### Attempted Murder of Jose Rivera

On or about July 26, 2003, in the State and Eastern District of Wisconsin,

**TIMOTHY VALLEJO, a/k/a "Tim,"**

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Jose Rivera, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 40

### Attempted Murder of Rival Gang Members at 2567 S. 9th Place, Milwaukee, WI

On or about July 26, 2003, in the State and Eastern District of Wisconsin,

**TIMOTHY VALLEJO, a/k/a "Tim,"**

the defendant, and others known and unknown, did knowingly commit an act involving murder,

that is, the defendant did knowingly and intentionally attempt to kill members of a rival street

gang, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 41

## Attempted Armed Robbery of Michael Jorgensen at 2148 S. 7th St., Milwaukee, WI

On or about July 28, 2003, in the State and Eastern District of Wisconsin,

### DESMOND CORNELIUS,

the defendants, and others known and unknown, did attempt to commit an act involving the robbery of Michael Jorgensen.

All in violation of Sections 943.32, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 42

### Attempted Murder of Spanish Cobras at 552 W. Maple, Milwaukee, WI

On or about November 12, 2003, in the Eastern District of Wisconsin,

### WARREN WELLS, a/k/a "Lauren/Rince,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill members of the Spanish Cobras street gang, all human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 43
### Attempted Murder of Rival Gang Members at 2266 S. Allis Street, Milwaukee, WI

On or about December 4, 2003, in the State and Eastern District of Wisconsin,.

### TIMOTHY VALLEJO, a/k/a "Tim,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill La Familia gang members John Ithier and Devin Benn, both human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act #44

### Drug Trafficking

On or about December 19, 2003, in the State and Eastern District of Wisconsin,

### KENNETH HILL, a/k/a "Boobie,"

the defendant, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D), and Title 18, United States Code, Section 2.

## Racketeering Act #45

### Drug Trafficking

On or about January 27, 2004, in the State and Eastern District of Wisconsin,

### KENNETH HILL, a/k/a "Boobie,"

the defendant, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(D), and Title 18, United States Code, Section 2.

## Racketeering Act # 46

### Attempted Arson of the Casteneda Home at 1822 Windlake Ave. , Milwaukee, WI

1.    On or about March 11, 2004, in the State and Eastern District of Wisconsin,

### JOHN GARCIA, a/k/a "Bobo," and

## JULIO MUNIZ, a/k/a "Fat Fat,"

the defendants, and others known and unknown, did commit an act involving arson, that is, by means of fire did attempt to intentionally damage the building of another without the owner's consent.

2.     The building is the Casteneda family home, located at 1822 Windlake Ave, Milwaukee, WI..

All in violation of Sections 943.02, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 47

## Kidnapping and Intimidation of Sally Deback at 1219 W. Arthur, Milwaukee, WI

The defendants below committed the following acts, any one of which alone constitutes the commission of this Racketeering Act:

### a.     Kidnapping of Sally Deback

On or about April 11, 2004, in the State and Eastern District of Wisconsin,

### KENNETH HILL, a/k/a "Boobie,"

the defendant, and others known and unknown, did commit an act involving the kidnapping of Sally Deback.

All in violation of Sections 940.31 and 939.05 of the Wisconsin Statutes.

### b.     Intimidation of Witness, Sally Deback

On or about April 11, 2004, in the State and Eastern District of Wisconsin,

### KENNETH HILL, a/k/a "Boobie,"

the defendant, and others known and unknown, did commit an act involving obstruction of justice, that is, the defendant did attempt to intimidate a witness, Sally Deback, by using intimidation and physical force, and threats of physical force, toward Sally Deback, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense.

All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

### Racketeering Act # 48

### Drug Trafficking

On or about August 3, 2004, in the State and Eastern District of Wisconsin,

### JOHN GARCIA, a/k/a "Bobo," and
### JULIO MUNIZ, a/k/a "Fat Fat,"

the defendants, and others known and unknown, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## Racketeering Act # 49

### Drug Trafficking

On or about August 6, 2004, in the State and Eastern District of Wisconsin,

### JOHN GARCIA, a/k/a "Bobo,"

the defendant, and others known and unknown, did knowingly and intentionally attempt to distribute a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 846 and Title 18, United States Code, Section 2.

## Racketeering Act # 50

### Attempted Murder of Spanish Cobra gang member Efrain Delgado

On or about January 30, 2005, in the State and Eastern District of Wisconsin,

### ALAN ANDERSON, a/k/a "Icy White,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill Efrain Delgado, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 51

### Drug Trafficking

1.    On or about February 23, 2005, in the State and Eastern District of Wisconsin,

### HUGO DELPORTILLO, a/k/a "Hugo," and
### CARLOS LOPEZ, a/k/a/ "Gordo,"

the defendants, did knowingly and intentionally distribute a controlled substance.

2. The offense involved at least 5 grams of a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2.

## Racketeering Act # 52

## Drug Trafficking

On or about February 25, 2005, in the State and Eastern District of Wisconsin,

### CARLOS LOPEZ, a/k/a "Gordy/Gordo," and HUGO DELPORTILLO, a/k/a "Hugo,"

the defendants did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## Racketeering Act # 53

## Attempted Murder of Julian Glave at 732 W. Oklahoma, Milwaukee, WI

On or about March 9, 2005, in the State and Eastern District of Wisconsin,

### CARLOS AVILA,

the defendant, and others known and unknown, did commit an act involving murder, that is, the defendant did knowingly and intentionally attempt to kill Julian Glave, a human being.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 54

## Drug Trafficking

1.     On or about April 12, 2005, in the State and Eastern District of Wisconsin,

### ADRIAN CERDA, a/k/a, "A-Town," and,
### HUGO DELPORTILLO, a/k/a "Hugo,"

the defendants, did knowingly and intentionally distribute a controlled substance.

2.     The offense involved at least 5 grams of a mixture and substance containing a detectable

amount of cocaine base, in the form of "crack" cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and

Title 18, United States Code, Section 2.

## Racketeering Act # 55

## Drug Trafficking

On or about April 22, 2005, in the State and Eastern District of Wisconsin,

### BOBBY PALACIOS,

the defendant, did knowingly and intentionally distribute a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and

Title 18, United States Code, Section 2.

## Racketeering Act # 56

## Drug Trafficking

On or about May 19, 2005, in the State and Eastern District of Wisconsin,

### BOBBY PALACIOS,

the defendant, did knowingly and intentionally distribute a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and

Title 18, United States Code, Section 2.

## Racketeering Act # 57

## Drug Trafficking

On or about July 5, 2005, in the State and Eastern District of Wisconsin,

## JOHN GARCIA,

the defendant, did knowingly and intentionally distribute a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and

Title 18, United States Code, Section 2.

## Racketeering Act # 58

## Attempted Murder of Rival Gang Members

On or about July 6, 2005, in the State and Eastern District of Wisconsin,

## ADRIAN CERDA, a/k/a "A-Town,"

the defendant, and others known and unknown, did commit an act involving murder, that is, the

defendant did knowingly and intentionally attempt to kill Juan Rodriguez and Rudy Gaona, both

human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

## Racketeering Act # 59

### Attempted Murder of Rival Gang Members

On or about July 9, 2005, in the State and Eastern District of Wisconsin,

**GONZALO MEJIA, a/k/a "Wetto,"**
**ADRIAN CERDA, a/k/a "A-Town," and**
**JOSE SOTO, a/k/a "Juno,"**

the defendants, and others known and unknown, did commit an act involving murder, that is, the

defendants did knowingly and intentionally attempt to kill Juan Martinez and Noel Martinez,

both human beings.

All in violation of Sections 940.01, 939.32 and 939.05 of the Wisconsin Statutes.

### Racketeering Act # 60

### Latin King Drug Conspiracy

From on or about January 1, 1998, and continuing until at least September 27, 2005, in

the State and Eastern District of Wisconsin and elsewhere,

**CARLOS AVILA,**
**ALAN ANDERSON, "Icey White,"**
**RAMON ALVARADO, a/k/a "Lil Wolfy,"**
**CARLOS BALENTINE, a/k/a "Fro,"**
**FLORENTINO CASTILLO, a/k/a "Boy,"**
**HUGO DEL PORTILLO, a/k/a "Hugo,"**
**WILLIAM FUHR, a/k/a "Squirt Guns,"**
**JOHN GARCIA, a/k/a "Bobo,"**
**JUAN GONZALEZ, a/k/a "Jay,"**
**RAMON GONZALEZ, a/k/a "Platinum,"**
**KENNETH HILL, a/k/a "Boobie,"**
**CARLOS LOPEZ, a/k/a "Gordy/Gordo,"**
**BRENT MANVILLA, a/k/a "Gucci,"**
**BOBBY PALACIOS, and**
**JOSE A. RAMIREZ, a/k/a "2 Bit,"**

the defendants herein, did knowingly and intentionally conspire with each other and with others known and unknown to the grand jury to distribute and possess with intent to distribute controlled substances, including cocaine, cocaine base in the form of "crack" cocaine, and marijuana. In violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code Section 846, and Title18, United States Code, Section2.